689 F.2d 445
 7 Collier Bankr.Cas.2d 470, 9 Bankr.Ct.Dec. 960
 In the Matter of MARIN MOTOR OIL, INC., Debtor.
OFFICIAL UNSECURED CREDITORS' COMMITTEE
v.
David P. MICHAELS, Trustee of Marin Motor Oil, Inc. and
Honorable Hugh Leonard, U.S. Trustee.
Appeal of Nicholas MARIN, Nick-O-Mar Realty Corp., Petrobras
Company, Inc., Marin Retail Gasoline Sales Company, Marin
Oil Co., Inc., Fra Mar, Inc., Marin Mercantile Oil Exchange,
Marin Drilling Corp., Marin Holding Company.
 Nos. 81-3083, 81-3084.
 United States Court of Appeals,
Third Circuit.
 Argued July 20, 1982.
Decided Sept. 29, 1982.
 
 Nolan, Bell & Moore, Newark, N.J., for appellee, Official Unsecured Creditors' Committee; Daniel E. Straffi, Newark, N.J., (argued), on brief.
 Kleinberg, Moroney, Masterson & Schachter, P.A., Millburn, N.J., for appellants, Nicholas Marin, et al.
 Ravin, Katchen & Greenberg, P.A., Newark, N.J., for appellant, David P. Michaels, trustee; Jack M. Zackin, Newark, N.J. (argued) and Walter J. Greenhalgh, Millburn, N.J. (argued), on brief.
 David N. Ravin, Ravin & Kesselhaut, West Orange, N.J., for appellant Isle Marin.
 Before ADAMS and HIGGINBOTHAM, Circuit Judges, and TEITELBAUM,* District Judge.
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 We are called upon in this appeal to determine whether a creditors' committee in a bankruptcy reorganization has the right to intervene in adversary proceedings instituted by a trustee. We first decide that we have jurisdiction under 28 U.S.C. § 1293(b) to address this issue at this stage of the litigation, and then proceed to ascertain that under the applicable section of the Bankruptcy Code, 11 U.S.C. § 1109(b), a creditors' committee has a right to intervene, a right that is not satisfied by participation as a mere amicus curiae. Accordingly we affirm the order of the district court granting intervention.
 
 I.
 
 2
 On April 21, 1981, Marin Motor Oil, Inc. filed a voluntary petition in the United States Bankruptcy Court for the District of New Jersey for reorganization under Chapter 11 of the Bankruptcy Code. All outstanding shares of Marin were owned by Nicholas Marin. Marin and his wife, Ilse Marin, also owned and controlled several related companies.
 
 
 3
 Two weeks after the petition was filed, the United States Trustee[1] appointed the Official Unsecured Creditors' Committee ("Committee") pursuant to 11 U.S.C. § 151102, and on May 11 the Committee moved for the appointment of a trustee of the estate. Before a trustee was appointed, the Committee filed a complaint seeking to have the various related companies included in the proceedings. Several days later, on May 19, the United States Trustee appointed a trustee of the estate (hereinafter referred to as "Trustee"). See 11 U.S.C. § 151104. Appointment of a trustee is the exception and not the rule in a Chapter 11 case, Weintraub & Resnick, Bankruptcy Law Manual P 8.13(1) (1980), but appointment of a trustee was requested by the United States Trustee because the facts of this case indicated a need for a disinterested third party to investigate the situation, to take appropriate action, and to oversee and manage the business.
 
 
 4
 The Trustee entered into a stipulation on June 16 with the Marins and the various Marin companies, freezing their assets; the stipulation was to terminate in 45 days. On July 2, the Committee voluntarily withdrew its complaint with the understanding that an order freezing the assets of the Marins and the Marin companies would be sought and that the Trustee would vigorously pursue his own complaint.
 
 
 5
 The Trustee then instituted the two adversary proceedings in which the Committee ultimately sought to intervene, and which gave rise to this appeal. The first adversary proceeding, instituted July 14, 1981, sought to recover for the estate a home and furnishings in Tenafly, New Jersey. The home was purchased with money that Nicholas Marin had borrowed from Marin Motor Oil. Nominal title to the home was held by the Marin Holding Company, a company under the complete control of Nicholas Marin. The Trustee asked for the imposition of a constructive trust on the home and furnishings, and for a declaration that Marin Motor Oil was the beneficial owner. The second adversary proceeding, instituted July 17, 1981, sought to extend the pending Chapter 11 proceedings to include the Marins individually and the various Marin companies besides Marin Motor Oil. The Trustee's complaint alleged that the various companies had been operated as a single economic unit, without observance of the requisite formalities; that the Marins had "complete control" over the various companies; that the Marins' personal assets were inextricably intertwined with those of the companies; that Marin Motor Oil financed the other companies; and that the purpose and effect of forming the other companies was to delay and defraud creditors.
 
 
 6
 During the following months, the Committee became increasingly dissatisfied with the Trustee's performance. It was especially disturbed that the Trustee had allowed the stipulation freezing the assets to lapse, although another stipulation was eventually extended to September 14. In early October, the Committee sought, under 11 U.S.C. § 1109(b), to intervene in the two adversary proceedings brought by the Trustee. Although the Committee's supporting affidavit contained serious complaints about the Trustee's handling of the proceedings, the Committee based its motion almost entirely on the claim that section 1109(b) accorded it an absolute right to intervene regardless of the Trustee's performance.
 
 
 7
 Reading section 1109(b) as permissive rather than mandatory, the bankruptcy court refused to grant intervention. It did, however, afford the Committee amicus curiae status "limited to the submission of briefs on all factual and legal issues raised and considered." Appendix at 5. The Committee then filed a Notice of Appeal to the United States District Court for the District of New Jersey. The district judge reversed, holding that section 1109(b) was mandatory, and could not be satisfied by allowing the Committee to participate as an amicus curiae. The district court's order was appealed to this Court by the Trustee and by the Marins and the Marin companies.
 
 II.
 
 8
 Before we can reach the merits of this dispute, it is necessary for us to determine that we have appellate jurisdiction at this juncture of the proceedings. Although the question is not free from doubt, we conclude that there is jurisdiction.
 
 
 9
 The usual rule in this Circuit is that "(w)hen an absolute right to intervene in a lawsuit is claimed, and the claim is rejected, the order denying intervention is considered final and appealable." Commonwealth of Pennsylvania v. Rizzo, 530 F.2d 501, 504 (3d Cir.), cert. denied, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976) (quoting Philadelphia Electric Co. v. Westinghouse Electric Corp., 308 F.2d 856, 859 (3d Cir. 1962), cert. denied, 372 U.S. 936, 83 S.Ct. 883, 9 L.Ed.2d 767 (1963)). On the other hand, an order granting intervention is ordinarily not considered appealable. EEOC v. American Telephone & Telegraph Co., 506 F.2d 735, 742 (3d Cir. 1974). See also C. Wright and A. Miller, 7A Federal Practice and Procedure § 1923 (1972 & Supp. 1982): "An order granting leave to intervene is not final and is not appealable as of right" (footnote, citing cases, omitted).
 
 
 10
 These rules, however, were developed in appeals under 28 U.S.C. § 1291, not in the special context of appeals under 28 U.S.C. § 1293(b), "a comprehensive and exclusive schema for jurisdiction of bankruptcy appeals," Universal Minerals, Inc. v. C. A. Hughes & Co., 669 F.2d 98, 101 n.3 (3d Cir. 1981). 28 U.S.C. § 1293(b) reads:
 
 
 11
 Notwithstanding section 1482 of this title, a court of appeals shall have jurisdiction of an appeal from a final judgment, order, or decree of an appellate panel created under section 160 or a District court of the United States or from a final judgment, order, or decree of a bankruptcy court of the United States if the parties to such appeal agree to a direct appeal to the court of appeals.
 
 
 12
 Section 1293(b) is, technically, not effective until April 1, 1984; but Universal Minerals, supra, 669 F.2d at 100 n.2, points out that by virtue of a "transition provision" we are currently vested with the same appellate authority that we would have under section 1293(b). Although section 1293(b), like section 1291, incorporates a "finality" requirement, it is not clear that this requirement must in all circumstances be given the same construction that it would have under section 1291. See Universal Minerals, 669 F.2d at 101 n.3.
 
 
 13
 There is no reason to doubt that the order of the bankruptcy court, denying a claimed absolute right of intervention, was final. Had the parties agreed to a direct appeal to this Court of that order, we would have had appellate jurisdiction under section 1293(b). The difficult question is whether we should apply the usual rule and hold that the district court's order granting intervention was interlocutory; or whether we should conclude that the district court, which was in essence an appellate tribunal reviewing a final judgment of a trial court, and whose order completely disposed of the appeal from the final judgment of the bankruptcy court, entered an appealable order.
 
 
 14
 As reluctant as we are to adopt an expansive interpretation of finality, see Bachowski v. Usery, 545 F.2d 363, 373-74 (3d Cir. 1976), we are persuaded both by the language of previous decisions of this Court and by a consideration of the policies underlying the general rule against interlocutory appeals that the district court's order should be considered final under section 1293(b).
 
 
 15
 In Universal Minerals, supra, 669 F.2d at 101, this Court observed that "(o) nce the district court's jurisdiction under § 1334(a) (governing appeals to district courts of final orders of bankruptcy courts) is established, our jurisdiction under § 1293(b) would seem to follow." If this statement is controlling, then clearly we have jurisdiction of the present appeal. It is true that Universal Minerals is distinguishable on its facts. In that case, the district court simply remanded to the bankruptcy court for an accounting. In this case, the bankruptcy court on remand from the district court must conduct, or continue to conduct, two full adversary proceedings. On the other hand, Universal Minerals apparently considered it significant that reversal of the district court's judgment in that case "would be preclusive of any further litigation on the relevant cause of action," id. at 101, quoting Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 482-83, 95 S.Ct. 1029, 1039-40, 43 L.Ed.2d 328 (1975). A reversal of the district court's order in this case would preclude any further litigation on the part of the Committee in the bankruptcy court adversary proceedings (although the Committee could still participate as an amicus ) and so could be considered final as to the Committee. Moreover, in the present case, as in Universal Minerals, "(t)he judgment of the district court certainly was final in the sense that nothing remained for the district court to do." Id. at 101.
 
 
 16
 In re Bildisco, 682 F.2d 72 (3d Cir. 1982), is also pertinent here. In Bildisco, this Court specifically declined to discuss the rationale employed by the district court in affirming a bankruptcy court ruling. Citing Universal Minerals, supra, 669 F.2d at 101-02, we wrote that "(t)he district court's analysis need not detain us ... because our role as a court of review is identical to that of the district court." Id. at 81 n.14. The passage from Universal Minerals which Bildisco cites notes that this Court is in as good a position to review the bankruptcy court's findings as is the district court. Where, as in the present case, an appeal is taken from a district court order reversing the bankruptcy court, it may be necessary to examine the district court's analysis as well as that of the bankruptcy court. Even if this is so, Bildisco's point that there is an identity of roles between the court of appeals and the district court in bankruptcy appeals strongly suggests that when the district court reviews a final order of the bankruptcy court, and we then review the district court's determination with respect to the bankruptcy court's order, we are in essence reviewing a final order of the bankruptcy court.
 
 
 17
 Policy considerations, as well as the language of Bildisco and Universal Minerals, also support a determination that the district court's order was appealable. Many of the principal rationales for narrowly construing finality are based on an understanding of the proper relation between a trial court and an appellate court, and have less applicability when one appellate court is asked to review what is in effect a lower appellate court. As one authority explains, "(t)he starting point of the final judgment rule, so obvious that it is ordinarily taken for granted, is found in the nature of the relationship between appellate and trial courts." This is because the trial court's "primary responsibilities for fact finding, standard application, and procedure mean that most rulings that precede factfinding do not lead to reversal, and that often a court of appeals can satisfactorily identify the controlling legal questions only after factfinding has been completed." C. Wright, A. Miller and E. Cooper, 15 Federal Practice and Procedure § 3907 (1976). The commentators go on to note that "(m)any of the justifications for postponing review beyond the point at which the trial court has finally decided a particular matter are cast in terms of saving time and avoiding unnecessary appeals." Id. at § 3907. But when the trial court has already issued what is concededly a final judgment, and has not merely "finally decided a particular matter," then some of these justifications may have less force. For example, although two appeals may delay the trial more than one appeal would, and delay is a serious problem that the final judgment rule is designed to ameliorate, the damage if any to a speedy and coherent trial is occasioned for the most part by the initial appeal.[2]
 
 
 18
 Another consideration leading us to construe finality somewhat less narrowly under section 1293(b) than under section 1291 is the traditional rule, under the old Bankruptcy Act provision (former 11 U.S.C. § 47(a)), that interlocutory appeals to courts of appeals in summary proceedings in bankruptcy were in general available as of right in "proceedings in bankruptcy," although not in "controversies arising in proceedings in bankruptcy." While section 1293(b) abolished the arcane distinction between "proceedings in bankruptcy" and "controversies arising in proceedings in bankruptcy," and substituted a finality requirement, it did not specify how finality should be interpreted. Since appellate courts have had long experience with relatively liberal appeal rules in many bankruptcy matters, and since these rules have not proved unduly burdensome, we need be somewhat less concerned about the dangers of interpreting finality in appeals under section 1293(b) slightly more broadly than in appeals under section 1291.
 
 
 19
 These policy considerations alone might be insufficient to persuade us to modify our usual finality rules. In combination with the language of Bildisco and Universal Minerals, however, policy considerations convince us that the district court order appealed from below should be considered final. But it is important to stress the limited nature of our holding on jurisdiction. We hold only that when the bankruptcy court issues what is indisputably a final order, and the district court issues an order affirming or reversing, the district court's order is also a final order for purposes of section 1293(b).
 
 III.
 A.
 
 20
 Having established that there is jurisdiction, we next consider the merits of the dispute. The language of the statute would seem clearly to favor the position espoused by the Committee:
 
 
 21
 A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.
 
 
 22
 11 U.S.C. § 1109(b). The words "this chapter" in section 1109(b) denote Chapter 11 of the Bankruptcy Code, the Chapter which deals specifically with reorganizations. It is important to bear this in mind since some of the confusion in this proceeding has arisen from a failure to recognize that Congress intended a creditors' committee to have more extensive rights in a reorganization than in a liquidation.
 
 
 23
 Appellants do not deny that section 1109(b) provides an absolute right of intervention to a creditors' committee in a Chapter 11 "case." Their position is based instead on a narrow interpretation of the term "case." Under their reading a "case" would not encompass the "adversary proceedings" connected with it. Neither the term "case" nor the term "adversary proceeding" is defined by the Bankruptcy Code; indeed, the Code makes no explicit mention of "adversary proceedings."[3] The term "adversary proceeding" is, however, defined by Bankruptcy Rules 701:
 
 
 24
 The Rules of this Part VII govern any proceeding instituted by a party before a bankruptcy judge to (1) recover money or property, other than a proceeding under Rule 220 or Rule 604, (2) determine the validity, priority, or extent of a lien or other interest in property, (3) sell property free of a lien or other interest for which the holder can be compelled to take a money satisfaction, (4) object to or revoke a discharge, (5) obtain an injunction, (6) obtain relief from a stay as provided in Rule 401 or 601, or (7) determine the dischargeability of a debt. Such a proceeding shall be known as an adversary proceeding.[4]
 
 
 25
 Most litigated matters in a bankruptcy case are adversary proceedings, see Trost, Trial Practice Under the New Bankruptcy Rules, 47 Am.Bankr.L.J. 111, 112 (1973); consequently the appellants' proposed reading of section 1109(b) would drastically restrict the rights of parties to appear and be heard.
 
 
 26
 The precise scope of the term "adversary proceeding" is of little significance here, since it is conceded that the two actions in which the Committee seeks to intervene are adversary proceedings. The crucial issue is whether we should read "case" to exclude adversary proceedings. Appellants would have us believe that "case" refers "to the general administration of a Chapter 11 proceeding leading up to the confirmation of a plan of reorganization by the Bankruptcy court." Appellants Brief at 15. We find no reason to adopt this crabbed definition. Appellants point to the fact that under 11 U.S.C. § 301, a voluntary case is commenced by the filing of a petition, whereas under Bankruptcy Rule 703, an adversary proceeding is commenced by the filing of a complaint. This simply proves, however, that an adversary proceeding is commenced in a different manner from the case with which it is connected; no one has ever questioned this. The courts and commentators appear to be universally opposed to appellants' construction of "case." As 2 Collier on Bankruptcy P 301.03 (15th ed. 1982) explains, "case" is "the widest term functionally" and other terms "designate steps within the case." Collier's definition was adopted in In re Sapolin Paints, Inc., 6 B.R. 582, 583 (Bkrtcy.E.D.N.Y.1980). See also the Advisory Committee's Note to Rule 101, according to which a "proceeding" is generally a litigated matter in a "case."
 
 
 27
 Attention is also called to the exact language of section 1109(b), which grants a right to appear and be heard not in "a case" but "on any issue in a case." It is unlikely that Congress would have used such sweeping language if it had not meant "case" to be a broadly inclusive term. Congress' failure specifically to mention adversary proceedings in section 1109(b) is hardly surprising, given that Congress did not specifically mention adversary proceedings anywhere in the Bankruptcy Code. Indeed, for all Congress knew, the Bankruptcy Rules that ultimately would be adopted under the Bankruptcy Reform Act of 1978 might render the expression "adversary proceedings" obsolete by utilizing some new designation or designations for litigated matters in bankruptcy.
 
 B.
 
 28
 Any doubt about the meaning of the language of section 1109(b) would appear to be dispelled by the legislative history, which states that section 1109(b)[5]
 
 
 29
 (p)rovides, in unqualified terms, that any creditor, equity security holder, or an indenture trustee shall have the right to be heard as a party in interest under this chapter in person, by an attorney, or by a committee. It is derived from section 206 of chapter X (11 U.S.C. 606).
 
 
 30
 S.Rep. No. 95-989, 95th Cong., 2nd Sess. 116 (1978), reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5902 (emphasis added). Section 1109(b) was of course passed as a very small part of the major overhaul of the bankruptcy laws embodied in the Bankruptcy Reform Act of 1978.
 
 
 31
 It would be a strained construction to read this "unqualified" right as being limited to participation in the general administrative aspects of cases. More importantly, the derivation of section 1109(b) from section 206 of Chapter X suggests that Congress had no intention of upsetting the long line of section 206 cases granting a broad, absolute right to appear and be heard. Section 206 had provided that "(t)he debtor, the indenture trustees, and any creditor or stockholder of the debtor shall have the right to be heard on all matters arising in a proceeding under this chapter." Chapter X Bankruptcy Rule 10-210(a), which according to the Advisory Committee Note to the Rule was derived from section 206, provided that:
 
 
 32
 (1) The debtor, the indenture trustees, and any creditor or stockholder of the debtor shall have the right to be heard on all matters arising in a Chapter X case.
 
 
 33
 (2) A labor union or employees' association, representative of employees of the debtor, shall have the right to be heard on the economic soundness of a plan affecting the interests of the employees.
 
 
 34
 13A Collier Bankruptcy P 10-210.02 (14th ed. 1977), remarks, on the relation between Rule 10-210(a)(1) and section 206, that "(t)he slightly altered language does not affect (sic) any change in the statute." Congress' obvious borrowing in section 1109(b) from the language of Rule 10-210(a) is further evidence that Congress intended for there to be no sharp break between section 206 and section 1109(b).
 
 
 35
 The statutory provision which section 206 replaced had given creditors and stockholders an absolute right to be heard on only a limited number of issues, and it was to remedy perceived deficiencies in this system of limited rights that section 206 was enacted. This Court explained the legislative history of section 206 in In re Keystone Realty Holding Co., 117 F.2d 1003, 1005 (3d Cir. 1941):In substituting Chapter X for Section 77B Congress clearly intended to broaden the rights of creditors to participate in corporate reorganization proceedings. Whereas subsection c of Section 77B had ... restricted their participation as of right to but two phases of the proceeding, section 206 of Chapter X, 11 U.S.C.A. § 606, conferred upon them "the right to be heard on all matters arising in a proceeding under this chapter." The intent thus disclosed by the statutory provisions is confirmed by the legislative history of the Chandler Act, which substituted Chapter X for Section 77B. In its report upon Representative Chandler's bill which became the Act of June 22, 1938, c. 575, 52 Stat. 840, the Senate Committee on the Judiciary said "Section 206 gives any creditor or stockholder, any indenture trustee, and the debtor, the right to be heard on all matters in the proceedings. Former restrictions on such right to be heard are eliminated as being undesirable." Senate Report No. 1916, 75th Cong.3d Sess.
 
 
 36
 See also In re Philadelphia & Reading Coal & Iron Co., 105 F.2d 358, 360 (3d Cir. 1939). 5 Collier on Bankruptcy P 1109.02 at 1109-19, 1109-20 (15th ed. 1982) summarizes the law under section 206 on the issue of concern to us:
 
 
 37
 The standing conferred by Section 206 of the Bankruptcy Act and Chapter X Rule 10-210(a)(1) was absolute and unlimited, and gave the debtor, creditors, stockholders and indenture trustees the same rights as if they were successful intervenors in the case, but without the necessity of a formal order of intervention. Those within the specified categories who sought to participate in the reorganization, therefore, were by statute parties to the case. Accordingly, it was clear that there was no need to seek intervention in order to be entitled to full participation in the reorganization of any creditor, stockholder or indenture trustee, or of a duly authorized creditors' or stockholders' committee or other representative since Chapter X Rule 10-210(a) (1) gave every substantial right or privilege that intervention could give.
 
 
 38
 (footnotes omitted)
 
 
 39
 For a recent example in the apparently unbroken line of cases that support the broad and absolute reading of section 206, see Matter of Duplan Corp., 450 F.Supp. 790 (S.D.N.Y.1978). In Duplan an indenture trustee sought to participate in an adversary proceeding instituted by creditors. The Court granted the indenture trustee a right to participate without even filing a motion to intervene, and read section 206 as intended "to remove procedural barriers to full participation" by interested parties. Id. at 791.
 
 
 40
 It should also be observed that there was a permissive intervention provision under Chapter X. It was not section 206, however, but section 207. It provided that "(t)he judge may for cause shown permit a party in interest to intervene generally or with respect to any specified matter." See also Chapter X Bankruptcy Rule 10-210(b). When Congress chose to derive section 1109(b) from section 206 rather than from section 207, it understood that it was adopting the mandatory and not the permissive provision. Indeed, the lack of a counterpart to section 207 in the current Code leads to an anomaly in the appellants' position. Although they assume that the bankruptcy court had discretion to permit or deny intervention by the Committee, they point to no statutory provision other than section 1109(b). But under their analysis, section 1109(b) is mandatory as to "cases" (narrowly understood) and is completely inapplicable to adversary proceedings. Thus, under appellants' analysis, it is unclear how the bankruptcy court could have allowed intervention even if it had wanted to do so.[6]
 
 
 41
 There is no basis for concluding that by changing the statutory language from "all matters arising in a proceeding under this chapter" to "any issue in a case under this chapter" Congress meant to effect a sweeping restriction in the right of interested parties to participate in litigated matters connected with bankruptcy reorganizations. This is confirmed by the fact that the section 1109(b) phrase "any issue in a case under this chapter" is taken virtually verbatim from a Bankruptcy Rule under section 206, Rule 10-210(a), quoted supra. The legislative history, which explicitly derives section 1109(b) from section 206 and which calls the right to be heard as a party "unqualified," strongly reinforces the impression that Congress did not mean for section 1109(b) to introduce the radical narrowing of rights that appellants would have us find.
 
 
 42
 The fact that rights under section 206 were mandatory and wide-ranging is significant not only because section 1109(b) is derived from section 206, but also because it suggests that the appellants' policy arguments are unrealistic. Appellants claim that the confusion, disorder, and expense that supposedly would be entailed by allowing each creditor or stockholder to intervene in adversary proceedings are such that it is "clearly unthinkable" that Congress could have intended to allow such a result. But the unqualified right of creditors and stockholders to intervene appears to have been the rule under section 206 for approximately 40 years, and the legislative history of section 1109(b) shows no dissatisfaction with it.
 
 
 43
 Appellants are unable to provide any support for their speculation that multitudes of individual creditors and stockholders would intervene in adversary proceedings unless we reject the broad and absolute reading of section 1109(b). Surely relatively few individuals would have enough interest in the outcome of an adversary proceeding to seek to intervene. The applicable Bankruptcy Rules and Federal Rules of Civil Procedure would afford to the bankruptcy courts sufficient means to control any confusion, disorder or expense that might result from the intervention of those parties who do seek to intervene. And even if the means are insufficient, that insufficiency is certainly not so patent that we would be forced-in the face of considerable evidence to the contrary-to conclude that Congress could not possibly have intended the reading of section 1109(b) urged here by the Committee. Moreover, in a case such as the present one, where intervention is sought by an official creditors' committee that hopes to speed up the proceedings and prevent dissipation of the estate, there is little danger that intervention will unnecessarily deplete the estate, delay the conclusion of the case, or prejudice any party.
 
 C.
 
 44
 The cases decided thus far under section 1109(b) support our view that this provision should be given as broad and absolute a reading as section 206 had received. In re Penn-Dixie Industries, Inc., 9 B.R. 936 (D.S.D.N.Y.1981), concluded that section 1109(b) gave the bankruptcy court no discretion to bar a debtor from raising an objection to the composition of the committee of equity security holders. The court considered it "clear that Congress intended section 1109(b) to carry forward an absolute right to be heard on any issue arising in a chapter 11 reorganization." Id. at 939. Penn-Dixie quoted certain remarks of Senator DeConcini and Congressman Edwards to the effect that "(r)ules of bankruptcy procedure or court decisions will determine who is a party in interest for the particular purposes of the provision in question." But Penn-Dixie held that the "express language of section 1109(b)" could not be overridden by such remarks. Id. at 939. We think it plain that in the context of section 1109(b), the remarks merely mean that the exact contours of the general phrase "party in interest" will be clarified by rules and court decisions, not that the courts will have discretion to deny intervention to the parties in interest-such as creditors' committees-that are specifically listed in section 1109(b). (The word "including" in section 1109(b) is not a term of limitation. 11 U.S.C. § 102(3).)[7]
 
 
 45
 According to In re D. H. Overmyer Telecasting Co., Inc., 18 B.R. 107 (Bkrtcy. N.D. Ohio, 1982), under section 1109(b) and Bankruptcy Rule 704, intervention in an adversary proceeding was First Bank of Boston's "unconditional right as the sole shareholder of (the debtor in possession)." In re Citizens Loan & Thrift Co., 7 B.R. 88, 90 (Bkrtcy. N.D. Iowa, 1980), ruled that the state of Iowa is a "party in interest" entitled under section 1109(b) to intervene generally in a particular Chapter 11 case, and quoted what it called the "official" comment to section 1109(b) that this section "continues the broad concept of the absolute right to be heard in order to ensure fair representation in the case." Sapolin Paints, supra, interpreted section 1109(b) as conferring an unconditional right to intervene in an adversary proceeding commenced to void a lien.[8]
 
 
 46
 Sapolin Paints was decided on the basis of Fed.R.Civ.P. 24(a)(1), which states that anyone shall be permitted to intervene when a statute confers an unconditional right. The statute in question was section 1109(b). Bankruptcy Rule 724 makes Fed.R.Civ.P. 24 applicable to adversary proceedings in bankruptcy cases, with one exception concerning service and filing of motions to intervene. 5 Collier on Bankruptcy P 1109.02 at 1109-20 (15th ed. 1982), quoted supra, states that formal intervention by parties in interest is unnecessary since section 206 (and presumably section 1109(b)) automatically provides them essentially the same rights as intervenors. Collier also notes, however, that section 206 did "not of itself grant a right to notice of all steps taken in the reorganization. Section 1109 should be similarly construed." Id. at 1109-23, 24, footnotes omitted. See also 3B Moore's Federal Practice P 24.11(1-2) at 24-454 (2d ed. 1982): "Rule 24 is inapplicable in cases where (§ 206) applies," footnote omitted. We need not decide, however, whether it was necessary for the Committee to move formally under Fed.R.Civ.P. 24 to intervene. The Committee did move formally, and there is no contention that by so doing it lost rights that it otherwise would have had.[9]
 
 
 47
 The language of the statute seems clearly to require that more than mere participation as an amicus be allowed. Section 1109(b) says that a party in interest may "raise ... any issue in a case under this chapter." But an amicus's participation is limited to the submission of briefs on issues already raised and considered. See e.g., Knetsch v. United States, 364 U.S. 361, 370, 81 S.Ct. 132, 137, 5 L.Ed.2d 128 (1960); and Re: Marin Motor Oil, Inc., Unpublished Opinion, DeVito, J., Appendix at 5. Legislative history confirms this reading of the statute, since it states that section 1109(b) gives "the right to be heard as a party in interest." S.Rep. No. 95-989, 95th Cong., 2nd Sess. 116, reprinted in 1978 U.S. Code Cong. & Ad. News 5787, 5902, emphasis added.
 
 
 48
 Appellants cite In re Cloud Nine, Ltd., 3 B.R. 199 (Bkrtcy. D.N.M. 1980), in support of their position that adversary proceedings are excluded from the absolute rights granted by section 1109(b). Yet in Cloud Nine the bankruptcy court, construing section 1109(b), declared that it "would interpret the right granted to the named parties to be heard 'on any issue in a case,' without limitation on the types of issues, to include an adversary proceeding to lift the automatic stay on virtually all assets of the Debtor." Id. at 200. On the other hand, the court stated that, at least under the old act, intervention should be allowed "liberally" but should not be "indiscriminate." Id. at 201. For this proposition, the court cited In re Watkins Investments, 5 Collier Bankr. Cas. 253, 256 (Bankr. W.D. Tenn. 1975). We believe that the citation to Watkins was inappropriate. Watkins involved a liquidation under Chapters I-VII of the Bankruptcy Act, not a reorganization. Hence, section 206 simply had no applicability in Watkins. Moreover, the court noted that Watkins was decided under the superseded Bankruptcy Act and that the issue of intervention under section 1109(b) was one of first impression. Id. at 200. Even if Cloud Nine mistakenly read Watkins as a section 206 case-indeed, a correct section 206 case-Cloud Nine should not be read as an unqualified endorsement of Watkins as an interpretation of section 1109(b). The court in Cloud Nine was evidently misled by an inapplicable decision into employing some language which suggested that in some adversary proceedings in reorganization cases parties in interest might lack an absolute right to intervene. But the holding of Cloud Nine offers no support to appellants.[10]
 
 
 49
 It is completely understandable that Congress would have given a creditors' committee greater rights to participate in reorganizations than in liquidations. As one commentator explains:
 
 
 50
 In contrast to the advisory role of a creditors' committee in chapter 7 cases, the very nature of a chapter 11 case (the attempt to continue the debtor's business, generally the continuation of a debtor in possession, and the need to address both the determination of assets available for secured and unsecured creditors and equity security holders and the determination of the allocation of said assets among creditors and equity security holders) dictates a much more active role for committees in chapter 11 cases.
 
 
 51
 DeNatale, The Creditors' Committee Under the Bankruptcy Code-A Primer," 55 Am.Bankr. L.J., 43, 51 (1981). See also Congress' remarks on the role that creditors and equity security holders committees are expected to play under 11 U.S.C. § 1102:
 
 
 52
 This section provides for the appointment of creditors' and equity security holders' committees, which will be the primary negotiating bodies for the formulation of the plan of reorganization. They will represent the various classes of creditors and equity security holders from which they are selected. They will also provide supervision of the debtor in possession and of the trustee, and will protect their constituents' interests.
 
 
 53
 H.R.Rep. No. 95-595, 95th Cong., 2d Sess. 401, reprinted in 1978 U.S. Code Cong. & Ad. News 5963, 6357. The failure of section 1102 specifically to mention the right of the committees to appear and be heard is of no help to the appellants in view of the fact that section 1109(b) specifically deals with this subject. Section 1109(b) of course gives the right to appear and be heard to parties other than creditors' committees, continuing from Section 206 and Rule 10-210(a)(1) "the broad concept of the absolute right to be heard in order to insure fair representation in the case and prevent excessive control by insider groups." Comment to § 1109, 1981 Collier Pamphlet Edition, Bankruptcy Code, Part 3 at 400.
 
 
 54
 At oral argument appellants called our attention to In re Segarra, 14 B.R. 870 (Bkrtcy. D.P.R. 1981). In addition to a detailed defense of the constitutionality of bankruptcy court jurisdiction under the Bankruptcy Reform Act of 1978 (which is no longer valid after Marathon Oil, supra ), and a holding that the Bankruptcy Code applies to Puerto Rico, Segarra addressed the question whether creditors or a creditors' committee have authority to bring certain adversary proceedings. The bankruptcy court wrote:
 
 
 55
 Sec. 1109(b) provides that various entities including a creditor and a creditors' committee may appear and be heard on any issue in (sic) case. This section permits their intervention during the development of a Chapter 11 case when plans are being negotiated, the business conduct of a debtor being investigated, and the need for a trustee considered; this is the meat and potatoes of a Chapter 11. However, Congress has added to this standard bill of fare what we call adversary proceedings and has provided by creating our pervasive jurisdiction that they, too, may be heard by the Bankruptcy Court. But we do not read in the act or anywhere else that Congress intended in expanding our jurisdiction to create new causes of action in favor of creditors and committees. To the contrary, the Congressional history indicates that Congress was solely interested in providing an additional forum where existing causes might be heard. Thus Congress hoped to reduce the delays resulting from the prior division of the juridical business of bankruptcy courts. Sec. 1109(b) applies to cases and not to proceedings.
 
 
 56
 id. at 878, footnote omitted. The Segarra court seems to have conflated two distinct questions: first, whether section 1109(b) creates "new causes of action in favor of creditors and committees"; second, whether 1109(b) gives creditors and committees an absolute right to intervene in adversary proceedings already initiated by a trustee or debtor in possession. Only the former issue was present in Segarra. To the extent that the court may have intended to express a negative answer to the second question-and we are uncertain if this is what was intended-its statements are dicta.[11]
 
 
 57
 The strongest support for the appellants appears in 5 Collier Bankruptcy Practice Guide P 83.08(6) (1st ed. 1981), which states in part:
 
 
 58
 A creditors' committee is not necessarily a party to an adversary proceeding unless named as such, or unless it is permitted to intervene under Bankruptcy Rule 724 ... (1109(b) ) does not necessarily mean that a creditors' committee may appear and be heard on any issue in every adversary proceeding pending in a case under Chapter 11.
 
 
 59
 The Practice Guide cites no authority for this statement, and in view of the language of the statute, the legislative history, and the case law, we are puzzled by it. We doubt if the Practice Guide can be considered as reliable a source as the well-established Collier on Bankruptcy, which takes an absolutist view of Section 1109(b).[12]
 
 
 60
 It is appropriate to add a point stressed by the district judge and by the Committee in its brief, namely that the broad and absolute construction of section 1109(b) comports with the usual expectation of parties in interest that they will have a right to be heard, as parties in interest, by the tribunal adjudicating their interests. This expectation has its roots in notions of due process and fair play, even though there is no allegation here that denial of a right of intervention to the Committee would itself violate due process. We are especially reluctant to adopt the extremely strained interpretation of section 1109(b) proposed by appellants when to do so would frustrate this expectation of participation.[13]
 
 IV.
 
 61
 The judgment of the district court will be affirmed.
 
 
 
 *
 Honorable Hubert I. Teitelbaum, United States District Court for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 The United States Trustee pilot program is currently in effect in the District of New Jersey and several other districts (11 U.S.C. § 1501). Under this program, the United States Trustee, who is appointed by the Attorney General (28 U.S.C. § 581), performs certain administrative tasks, including some that are otherwise reserved for the bankruptcy judge
 
 
 [2]
 In the present case, the adversary proceedings in the bankruptcy court apparently continued unaffected by the appeal brought in this court
 
 
 [3]
 The term "proceeding" is used in 28 U.S.C. § 1471. But this was not meant to be synonymous with "adversary proceeding":
 As used in (section 1471) everything that occurs in a bankruptcy case is a proceeding. Thus, proceeding here is used in its broadest sense, and would encompass what are now called contested matters, adversary proceedings, and plenary actions under current bankruptcy law. It also includes and (sic) disputes related to administrative matters in a bankruptcy case.
 
 
 [1]
 Collier on Bankruptcy P 3.01 at 3-33, 3-34 (15th ed. 1982) quoting S.Rep. No. 989, 95th Cong., 1st Sess. 153-54 (1978), U.S. Code Cong. & Admin. News 1978, p. 5787. Note the Senate Report's assumption that "adversary proceedings" are among the things that "(occur) in a bankruptcy case."
 
 
 [4]
 Under Section 405(d) of the Bankruptcy Reform Act of 1978, Pub.L. 95-598, 92 Stat. 2549, 2685 (1978), Bankruptcy Rules in effect on September 30, 1979-as Rule 701 was-remain in effect under the Bankruptcy Reform Act to the extent not inconsistent with the Act, until repealed or superseded by new rules prescribed and effective under 28 U.S.C. § 2075. Suggested Interim Bankruptcy Rule 7001, which has been adopted by the New Jersey Bankruptcy Court, provides that a "proceeding before a bankruptcy judge for legal, equitable, or declaratory relief which arises under nonbankruptcy law is an adversary proceeding governed by Part VII of the Bankruptcy Rules." Local Rules (adopted under 28 U.S.C. § 2071) are effective to the extent they are consistent with the Bankruptcy Code and with those Bankruptcy Rules that are themselves consistent with the Code. See 5 Collier on Bankruptcy P 1100.01(3) (15th ed. 1982)
 
 
 [5]
 The Senate Report actually referred to this section as 1109(a), since prior to final amendment 1109(a) and 1109(b) were the reverse of their final version. Legislative History of § 1109, 1981 Collier Pamphlet Edition, Bankruptcy Code, Part 3 at 400
 
 
 [6]
 In re Citizens Loan & Thrift Co., 7 B.R. 88 (Bkrtcy.N.D.Iowa, 1980) argued that Rule 10-210(b), allowing permissive intervention to "any interested person" in proceedings under former Chapter X, is applicable to proceedings under current Chapter 11. Perhaps appellants meant to make a similar point here
 
 
 [7]
 See e.g. In re Casco Bay Lines, Inc., 14 B.R. 18 (Bkrtcy.App.D.Me.1981), affirming (although not on the merits) a bankruptcy court ruling that the City of Portland was not a "party in interest" and that its right to intervene could be limited. In re Co Petro Marketing Group, Inc., 680 F.2d 566, 572-73 (9th Cir., 1982), held that the Commodity Futures Trading Commission was a "party in interest" under section 1109(b) and was therefore entitled to intervene in bankruptcy proceedings and to appeal to the bankruptcy appellate panel
 
 
 [8]
 Sapolin Paints' unconditional interpretation of section 1109(b) may technically be dicta, since the court stated that it was
 unnecessary, for purposes of the present proceeding, to determine whether Chemical is entitled to intervene as of right, or only as of grace, because even if the Court were not satisfied that § 1109(b) confers an unconditional right to intervene, it would permit such intervention as a matter of discretion under FRCP 24(b).
 Id. at 584. Citizens Loan, supra, however, ruled that section 1109(b) was absolute even though it stated in dictum that it would allow intervention even if section 1109(b) were inapplicable and the intervenor were forced to rely only on the permissive intervention provision of Rule 10-210(b). See also In re Commercial Finance Corp. of Nevada, 16 B.R. 98, 100 (Bkrtcy. D.D.C., 1981) (citing Citizens Loan ).
 
 
 [9]
 The Committee has not claimed a right to intervene under Fed.R.Civ.P. 24(a)(2), which grants intervention of right under certain circumstances. But see In re Devault Manufacturing Co., 4 B.R. 382, 387 (Bkrtcy.E.D.Pa.1980) which granted a creditors' committee intervention under Fed.R.Civ.P. 24(a)(2), and made no reference at all to section 206 or to section 1109(b)
 
 
 [10]
 The Committee here claims that Watkins involved a claim of intervention under Fed.R.Civ.P. 24(b) (that is, permissive intervention) rather than 24(a) (intervention of right). Though Watkins is not completely clear, it seems more likely that it was relying on Fed.R.Civ.P. 24(a)(2), which concerns intervention of right when there is no statute conferring an unconditional right to intervene. Watkins relies on a tax case, United States v. Union National Bank, 371 F.Supp. 763 (D.C.Pa.1974), which in turn cites another tax case, Donaldson v. United States, 400 U.S. 517, 529, 91 S.Ct. 534, 541, 27 L.Ed.2d 580 (1971), which interprets Fed.R.Civ.P. 24(a)(2). But the important point is that whether Watkins is based on Fed.R.Civ.P. 24(b) or on Fed.R.Civ.P. 24(a)(2), it is not based on the predecessor of section 1109(b) of the Bankruptcy Code
 
 
 [11]
 On the standing of a creditors' committee to bring suit, see Matter of Joyanna Holitogs, Inc., 21 B.R. 323, 326 (Bkrtcy.S.D.N.Y.1982) ("(T)he right to be heard given the creditors' committee ... includes the right to sue when a trustee or debtor in possession will not"). See also Matter of Monsour Medical Center, 5 B.R. 715 (Bkrtcy.W.D.Pa.1980) (basing the standing of a creditor's committee to bring an adversary proceeding on grounds other than section 1109(b))
 
 
 [12]
 According to 5 Collier On Bankruptcy P 1109.02 at 1109-23 (15th ed. 1982),
 Section 1109(b) merely states that certain designated parties are "parties in interest" and thus presumably do not have to formally intervene in a chapter 11 case. Although section 1109 grants party in interest status to creditors, equity security holders and certain of their representatives, section 1109 does not purport to deprive the bankruptcy court of its discretion with respect to allowance of a petition for intervention in a reorganization case by other parties.
 Footnotes omitted. We have already seen that Collier on Bankruptcy would include adversary proceedings within the definition of "case." Supra at 12. Thus, the passage quoted here implies that the bankruptcy court has no discretion to deny intervention to creditors in an adversary proceeding connected with a Chapter 11 case.
 
 
 [13]
 Because we have held that section 1109(b) affords an absolute right, we need not consider the Committee's contention that even if section 1109(b) is permissive the bankruptcy court abused its discretion in denying intervention