810 F.2d 87
 16 Collier Bankr.Cas.2d 349, Bankr. L. Rep. P 71,607
 In re Phillip Lee GARDNER, Debtor.
Edwin H. BREYFOGLE, Trustee-Appellee, (85-3234/3335)
Cross-Appellant, (85- 3275/3368) Trustee-Appellant, (85-3366)
Paul Ray Marx, Elizabeth Marx, Plaintiffs-Appellees,
(85-3234/3335) Cross- Appellants, (85-3275/3368)
Plaintiffs-Appellants, (85-3366)
v.
GRANGE MUTUAL CASUALTY COMPANY, Defendant-Appellant,
(85-3234/3335) Cross- Appellee, (85-3275/3368)
Defendant-Appellee. (85-3366)
 
 Nos. 85-3234, 85-3275, 85-3335, 85-3366 and 85-3368.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 13, 1986.
Decided Jan. 22, 1987.
Rehearing Denied March 2, 1987.
 Donald A. Powell, John L. Reyes, argued, Robert L. Tucker, Buckingham, Doolittle & Burroughs, Akron, Ohio, for Grange Mut. Cas. Co.
 Stanley G. Burech, argued, Burech & Sargus, St. Clairsville, Ohio, for Marx.
 Michael A. Thompson, Russ Kendig, Krugliak, Wilkins, Griffiths, & Dougherty, Co., LPA, Canton, Ohio, for Breyfogle.
 Before WELLFORD and GUY, Circuit Judges; and PECK, Senior Circuit Judge.
 WELLFORD, Circuit Judge.
 
 
 1
 The threshold question in this case, which raises numerous issues on appeal, is the jurisdictional question whether the district court's reversal and remand of a bankruptcy judge's decision was a final and appealable order. For the reasons stated below, we find that we do have jurisdiction to hear the appeal, and we also conclude that defendant's insurance policy did not extend coverage to the debtor under the circumstances of the accident at issue.
 
 I.
 
 2
 No party takes issue with the underlying facts giving rise to this appeal. On July 16, 1972, Phillip Lee Gardner, the debtor in bankruptcy, drove Barbara Sue Mills (Mills) to a family picnic in Wheeling, West Virginia, in an automobile owned by John R. Gardner, Phillip Gardner's father. The automobile was insured under a "family combination automobile policy" issued by defendant Grange Mutual Casualty Company (Grange). Phillip Gardner became ill at the picnic and Mills drove the automobile back to Ohio with Gardner riding as a passenger. Mills was 20 years old at that time. In Belmont County, Ohio, the Gardner automobile collided with the automobile of the plaintiff, Paul Marx, and his wife, Elizabeth Marx, also a plaintiff, sustained personal injuries in that collision. This complicated and protracted litigation is the result of the Marxes' effort to recover damages after that accident.
 
 
 3
 On February 1, 1974, the Marxes filed a complaint for money damages against Phillip Lee Gardner and Mills. The Marxes and Mills reached a settlement, whereby Mills' insurer paid $12,500.00 to the Marxes in exchange for a covenant not to sue. The case proceeded to trial against Gardner[1] on an agency theory.
 
 
 4
 Hudson Hillyer, Gardner's attorney, recommended to Grange that it defend him. Grange notified Hillyer on at least six occasions that it had no duty to defend and that no insurance coverage existed on behalf of Gardner. Grange determined that no coverage existed because of the policy's language in Endorsement A-7B, which stated: "such insurance as is afforded by the policy shall not apply while the owned automobile is being operated or used by ... any person under 21 years of age ... other than the named insured or a member of the named insured's immediate family." On May 1, 1978, the Marxes offered to settle their claim against Gardner for $12,500.00, well within the limits of the insurance policy issued by defendant. Because prior communication with Grange had been fruitless, Hillyer never communicated the settlement offer to Grange.
 
 
 5
 On May 5, 1978, the case was tried and the jury returned a verdict against Gardner and in favor of Elizabeth Marx for $55,000.00 and in favor of Paul Marx for $35,000.00. On May 9, 1978, the Common Pleas Court of Belmont County entered judgment on the verdict and taxed the costs against Gardner.
 
 
 6
 On July 25, 1978, the Marxes filed a supplemental complaint against Gardner and Grange seeking the amount of the judgment entered on May 9, 1978, interest, and costs. Gardner filed a cross-claim against Grange alleging breach of contract and bad faith, seeking damages in the amount of the judgment rendered against him and his attorney's fees. Grange answered the complaint and cross-claim asserting the affirmative defenses of failure to state a claim upon which relief can be granted and the absence of liability under the insurance policy.
 
 
 7
 Grange and Gardner agreed to a settlement of all claims on January 6, 1981. Gardner contends that at that time he believed he was settling his claim only, and not the Marxes' claim against Grange. Gardner executed a release in favor of Grange in exchange for $10,000.00. Gardner paid $7,000.00 of the amount he received in the settlement to his attorney for the services rendered in representation in the action in common pleas court, and used the remaining $3,000.00 to pay existing bills. Gardner admits that at the time the release was signed, he could not pay the Marxes' judgment. Gardner further contends that at the time of the settlement, Grange's attorney knew Gardner was insolvent and would not pay the outstanding judgment owed to the Marxes, then approximately $90,000. The Marxes attempted to pursue the claim against Grange in the Belmont County Court of Common Pleas and filed a motion for summary judgment. The court denied the motion on May 30, 1980. On March 13, 1981, the Marxes filed a petition requesting an involuntary order for relief in the United States Bankruptcy Court against Gardner. Edwin H. Breyfogle was appointed trustee.
 
 
 8
 On the trustee's application, the bankruptcy court removed the action between the Marxes and Grange from the Belmont County Court of Common Pleas to the bankruptcy court on July 22, 1981. The trustee then filed an action in the bankruptcy court against Grange and Gardner. The bankruptcy court consolidated the action removed from common pleas court with the action filed by the trustee for a trial on the merits.
 
 
 9
 The trustee's complaint in bankruptcy alleged that Grange breached the insurance contract, wilfully and in bad faith, by refusing to defend Gardner and by failing to provide coverage. The complaint also alleged that the release executed by Gardner and Grange was fraudulent under both § 548 of the Bankruptcy Code and Ohio Revised Code § 1336 in that Gardner was insolvent or became insolvent because of the release and less than equivalent value was exchanged. The complaint also claimed that Gardner executed the release with intent to hinder, delay or defraud the Marxes, but this count was dismissed on the parties' stipulation. Count six of the complaint, alleging that Grange induced Gardner to sign the release by fraudulently promising to settle with the Marxes, was dismissed by the bankruptcy court on summary judgment prior to trial. Finally, the Marxes alleged that the action removed from the Belmont County Common Pleas Court was a creditor's bill under Ohio Revised Code section 2333.01.
 
 
 10
 In September of 1982 the bankruptcy court ruled in favor of Grange and against the trustee and the Marxes. Specifically, the bankruptcy court decided that the insurance policy did not cover Gardner in this accident because the exclusion in Endorsement A7-B applied. The bankruptcy court further found that the release Gardner executed in favor of Grange in January 1981 was not fraudulent. Finally, the court found that the Marxes failed properly to plead or to prove a creditor's bill under Ohio law.
 
 
 11
 Breyfogle, the trustee, and the Marxes appealed this judgment to the district court. Included in the appeal was the Ohio state court decision that overruled the Marxes' motion for partial summary judgment, and the bankruptcy court's decision in favor of Grange.
 
 
 12
 To complete this saga, the district court reversed the bankruptcy court, finding that Grange's insurance policy with Gardner's father extended liability coverage to Gardner. The court further found, applying Ohio law, that Grange would have been liable to Gardner as a matter of law for the attorney's fees incurred in his defense and for the $90,000 judgment the Marxes obtained against him had Gardner pursued his cross-claim against Grange. The district court, however, remanded the case to the bankruptcy court to determine whether the release signed by Gardner and Grange was fraudulent as to the Marxes and the trustee. On remand, the bankruptcy court was to determine whether Gardner received a fair and equivalent value in exchange for his release to Grange, whether Gardner intended to defraud his creditors when he executed the release, and whether he executed the release with a belief or knowledge that he would be unable to pay his debts as they became due.
 
 
 13
 Following the district court's decision, Breyfogle and the Marxes moved the district court pursuant to Federal Rules of Civil Procedure 52(b) and 59(e) to make additional findings concerning issues raised on appeal from the bankruptcy court's decision but allegedly not decided by the district court. Plaintiffs specifically requested the court to decide whether the Common Pleas Court of Belmont County erred in overruling the Marxes' motion for partial summary judgment. The Marxes' motion and the Belmont County court's ruling predated the release, which was not executed until January 6, 1981. Breyfogle and the Marxes further requested the district court to decide if the release was valid under state contract law. Finally, they requested the district court to determine if Grange's actions made Grange liable not only for Gardner's judgment and attorney's fees but also for punitive damages and the trustee's attorney's fees.
 
 
 14
 On March 15, 1985, the day following the filing of the Rule 52(b) and 59(e) motions, Grange filed a notice of appeal from the district court's judgment of March 4, 1985 to this court. Breyfogle and the Marxes filed a cross-appeal and a motion to dismiss for lack of jurisdiction. Grange filed a subsequent motion to appeal from the district court's March 4 order, and again Breyfogle and the Marxes filed a cross-appeal and a motion to dismiss.
 
 
 15
 On April 2, 1985, the district court denied the motion for additional findings because it concluded that Grange's appeal to this court deprived the district court of jurisdiction to entertain the motion. On May 1, 1985, Breyfogle and Marx appealed from the district court's April 2 order. These various appeals were consolidated.
 
 II.
 
 16
 This court's jurisdiction on appeal from a district court's decision in a bankruptcy case is limited by 28 U.S.C. § 1293(b) to "final judgments[s], order[s], or decree[s]...." * (emphasis added).[2] The first issue in this case, therefore, is whether the district court order reversing and remanding the bankruptcy court's final decision is a final, appealable order pursuant to § 1293(b).
 
 
 17
 We have ruled that a magistrate's remand order to an administrative agency is not a final, appealable order. See Whitehead v. Califano, 596 F.2d 1315, 1319 (6th Cir.1979). We have not addressed this issue in the bankruptcy context. A split has developed among circuits that have addressed this precise issue. Grange urges us to adopt the reasoning of courts that have found district court remands of final bankruptcy decisions final and appealable. See, e.g., In re Sambo's Restaurant's, Inc., 754 F.2d 811 (9th Cir.1985); In re Comer, 716 F.2d 168 (3d Cir.1983); In re Bestmann, 720 F.2d 484 (8th Cir.1983); In re Marin Motor Oil, Inc., 689 F.2d 445 (3d Cir.1982), cert. denied sub nom Michaels v. Official Unsecured Creditors' Comm., 459 U.S. 1206, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983); Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98 (3d Cir.1981). Breyfogle and the Marxes urge the opposite position, citing particularly In re Riggsby, 745 F.2d 1153 (7th Cir.1984), which asserts that the "majority" rule holds remands to bankruptcy courts unappealable. See 745 F.2d at 1155 (citing cases from the Fifth, Ninth, Tenth, and Eleventh Circuits).
 
 
 18
 We first examine the reasons for holding that remands to bankruptcy courts are appealable orders. Several courts have noted that the district court order is "final" when it leaves the district court with nothing further to do. See, e.g., In re Bestmann, 720 F.2d at 486; In re Comer, 716 F.2d at 172. Next, courts argue that reversing the district court order would preclude further litigation. See, e.g., In re Sambo's, 754 F.2d at 814; In re Bestmann, 720 F.2d at 486. Courts also note that when the district court sits as an appellate court reviewing a bankruptcy court decision, the district court and court of appeals play identical roles. The court of appeals, therefore, is in as good a position to review the case as was the district court, and the sensitive relationship between trial and appellate courts, which is a factor underlying the policy of finality, is not implicated. See, e.g., In re Sambo's, 754 F.2d at 814; In re Marin Motor Oil, Inc., 689 F.2d at 449. Another objective of the finality rule is to avoid unnecessary appeals and delays, but the delay factor is not compelling when the bankruptcy decision was final rather than interlocutory. In re Sambo's, 754 F.2d at 815. The interest in judicial efficiency is particularly well served in this case by treating the district court order as final rather than adding further delay to a case that has been prolonged in several tribunals for twelve years. Each of these considerations militates in favor of finding the district court order appealable in this case.
 
 
 19
 Another key factor that determines whether a district court order is appealable turns on what, if anything, the district court order leaves for the bankruptcy court to do. If the district court affirms or reverses a final bankruptcy court order, requiring no further factual development on any central or controlling issue, appellate courts generally agree that the district court order is final and appealable. See, e.g., In re Stanton, 766 F.2d 1283, 1287 (9th Cir.1985); In re Sambo's Restaurants, Inc., 754 F.2d 811, 814 (9th Cir.1985); In re Marin Motor Oil, Inc., 689 F.2d 445, 449 (3d Cir.1982); In re Cross, 666 F.2d 873, 878-79 (5th Cir.1982). If, however, the district court order remands the case for a factual determination on an issue central to the case, the district court order is determined not to be appealable because the case cannot be resolved properly until the appropriate fact-finder, the bankruptcy court, makes the necessary factual findings. See, e.g., In re TCL Investors, 775 F.2d 1516, 1518-19 (11th Cir.1985); In re Stanton, 766 F.2d at 1287-88; In re Martinez, 721 F.2d 262, 265 (9th Cir.1983); accord In re Riggsby, 745 F.2d 1153, 1156 (7th Cir.1984) (remand for "significant further proceedings" not final).
 
 
 20
 In light of these guidelines from other courts, we conclude that the district court order is appealable under the particular circumstances of this case. The district court order in this case first reversed the bankruptcy court order on a pure question of law. This legal issue concerning the interpretation of the insurance policy is the central, determinative issue underlying this dispute. If, as the bankruptcy court determined as a matter of law, no coverage exists, the entire case is at an end. The facts are undisputed; no further factual development is necessary on the insurance coverage issue. The remand directed further factual determinations on a question of whether the release was fraudulent. That question becomes academic if Grange were found not liable under the insurance policy at issue. Under these circumstances, we find the Riggsby line of cases is not controlling; the reasoning of In re Sambo's is more persuasive in this situation.[3] The reasoning of Whitehead v. Califano, 596 F.2d 1315 (6th Cir.1979), moreover, is inapplicable here because the district court order in Whitehead remanded the case for necessary factual determinations and made no ruling on the merits. See id. at 1318. The factual determinations in Whitehead were required in order to reach a legal conclusion. In contrast, the district court order in this case resolved a central question of law on the merits.
 
 III.
 
 21
 Having found that we have jurisdiction, we next consider the question whether the insurance policy's coverage extended to the July 1972 accident. The pertinent language of the insurance policy reads as follows:
 
 
 22
 In consideration of the issuance of this policy at the specified premium, it is agreed that such insurance as is afforded by the policy shall not apply while the owned automobile is being operated or used by: (Item or Items Checked Are Applicable ) [X ] any person under 21 years of age * * * other than the named insured or a member of the named insured's immediate family. This exclusion shall not apply with respect to the liability of the named insured for bodily injury or property damage resulting from the operation or use of the automobile by such excluded persons....
 
 
 23
 (Endorsement A-7B). Neither party disputes that at the time of the accident, the car was actually "operated" by Barbara Mills, who was under 21 and not a member of the insured's family. In addition, the parties agree that Phillip Gardner, who was a member of the insured's immediate family, was a passenger in the car at the time. The dispute arises over the proper application of the policy language to these facts.
 
 
 24
 The language in Endorsement A-7B is not ambiguous. At the time of the accident, the car was being "operated or used by ... [a] person under 21 years of age other than the named insured or a member of the named insured's immediate family." Mills, under 21 and not a family member, was driving the car. The exclusion, therefore, applies in this case. That Phillip Gardner, an immediate family member, may have also been "using" the car at the time does not alter the operation of the exclusion in this case. We agree with the bankruptcy judge in this interpretation of the contract language.
 
 
 25
 The second sentence of Endorsement A-7B bolsters this conclusion. The second sentence provides: "This exclusion shall not apply with respect to the liability of the named insured for bodily injury or property damage resulting from the operation or use of the automobile by such excluded persons." The plain meaning of this sentence is that the named insured, John Gardner in this case, is covered under the policy for any liability he may incur from a person under 21 operating or using the automobile. Conspicuously absent from this second sentence is any reference to members of the named insured's immediate family. The second sentence, therefore, indicates that members of the insured's immediate family are not covered for liability incurred from a non-family member under 21 operating or using the car. The district court found this second sentence to create ambiguity that must be construed against the insurer. We find, however, that the meaning of the second sentence is unambiguous, and that the two sentences of the Endorsement taken together clearly provide that Phillip Gardner was not covered in this situation.
 
 
 26
 This result gives effect to the intent of this policy language. The evidence demonstrated that drivers under 21 are greater insurance risks than are drivers over 21. The purpose of the exclusion in Grange's policy is to minimize the risk the policy insures and to lower the premium for the family combination policy. The rates under this policy were lower because the company could control the risks involved with the insured's immediate family. Allowing non-family members under 21 to operate the car obviously would increase the risks and would increase the premium. The clear purpose of the exclusion is to avoid that risk. That a member of the insured's family was also "using" the car as a passenger when someone under 21 was operating the car does not minimize the risk. Characterizing a passenger as "using" a car, see Brown v. Kennedy, 141 Ohio St. 457, 48 N.E.2d 857 (1943), is thus irrelevant in this case. Giving effect to the purpose and meaning of the policy language at issue, we conclude that the exclusion applied in this case. Grange, therefore, was not liable to Gardner to defend him as a covered party in this accident, or to extend coverage to pay the Marxes' claim. Because Grange was not liable, we need not reach the remaining issues.
 
 
 27
 For these reasons we REVERSE the district court's ruling that the insurance policy extended to this accident and REMAND to the district court to effectuate these conclusions.
 
 
 
 [1]
 For reasons unexplained in the record, the Marxes did not sue the car owner, John B. Gardner. We therefore refer in this opinion to Phillip Lee Gardner as "Gardner."
 
 
 [2]
 Section 1293(b) provides in full:
 Notwithstanding section 1482 of this title, a court of appeals shall have jurisdiction of an appeal from a final judgment, order, or decree of an appellate panel created under section 160 or a District court of the United States or from a final judgment order, or decree of a bankruptcy court of the United States if the parties to such appeal agree to a direct appeal to the court of appeals.
 28 U.S.C. § 1293(b).
 
 
 [3]
 Sambo's ruled that when a bankruptcy court order is final and results in even a nonfinal district court order on review, the district court order is appealable if nothing remains for the district court to do. See 754 F.2d at 814. We need not embrace such a broad rule in this case