In re PENN–DIXIE INDUSTRIES, INC.,
Debtor-Appellant.

In re PENN–DIXIE STEEL
CORPORATION, Debtor.

Bankruptcy Nos. 80 B–10472–73, 80
Civ. 5248 (JMC).

United States District Court,
S. D. New York.

Feb. 10, 1981.

See also, Bkrtcy., 9 B.R. 941.

Fried, Frank, Harris, Shriver & Jacobson, New York City (Matthew Gluck, New York City, of counsel), for debtor-appellant.

Battle, Fowler, Jaffin, Pierce & Kheel, New York City (Lawrence Mittman, New York City, of counsel), for appellee Midwest Rubber Reclaiming Co.

Jerome Feller, Asst. Regional Administrator, Securities and Exchange Commission, New York City (Laura Corsell, New York City, of counsel), for appellee Securities and Exchange Commission.

CANNELLA, District Judge:

On appeal, the Order of the Honorable Burton R. Lifland, Bankruptcy Judge, entitled "Order Denying Debtors' Motion to Disqualify Midwest Rubber Reclaiming Co. from Service on Equity Security Holders' Committee" and dated August 20, 1980, is affirmed. Rules of Bankruptcy Procedure 810.

## FACTS

·On April 7, 1980, debtor-appellant Penn-Dixie Industries, Inc. ["Penn-Dixie"] and debtor Penn-Dixie Steel Corporation, a wholly-owned subsidiary of Penn-Dixie, filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* Since that time, the debtors have continued to operate their businesses and manage their properties as debtors-in-possession. On July 30, 1980, on the application of Midwest Rubber Reclaiming Co. ["Midwest"], the United States Trustee appointed a committee of equity security holders [the "Equity Committee" or "Committee"] pursuant to 11 U.S.C. §§ 151102(b) and 1102(b)(2).[1] The Trustee included Midwest as a member of the Equity Committee. Thereafter, Penn-Dixie moved to disqualify Midwest from serving on the Committee on two grounds: (1) that in a Schedule 13D filed by Midwest with the Securities and Exchange Commission ["SEC"] pursuant to the SEC's Rule 13d, 17 C.F.R. 240.13d–1, Midwest stated its intention to obtain control of Penn-Dixie, and therefore Midwest could not carry out its fiduciary responsibilities on the Equity Committee representing the interests of Penn-Dixie's shareholders generally, and (2) that Midwest had used highly confidential information provided to it by Penn-Dixie, during discussions concerning Midwest's possible efforts to arrange post-petition financing for Penn-Dixie, to purchase a substantial quantity of Penn-Dixie common stock, resulting in an SEC investigation, and therefore it would be incongruous to place Midwest in a position on the Equity Committee where it would, by necessity, regularly receive such information.

Midwest cross-moved to dismiss Penn-Dixie's motion on the following grounds: (1) that Penn-Dixie lacks standing to raise an objection to the composition of the membership of the Equity Committee, and (2) that, even if Penn-Dixie had standing, it had failed to demonstrate that the membership of the Committee was "not representative of the different claims or interests to be represented," as required for the court to alter the Committee's membership under 11 U.S.C. § 1102(c).

On August 14, 1980, Judge Lifland conducted a hearing on the motions. At that time, the SEC joined with Penn-Dixie on both the conflict of interest and standing issues,[2] stating that Penn-Dixie "obviously" had standing and that Midwest's interests were diametrically opposed in certain important respects to the interests of other equity security holders. Transcript of Hearing at 33–35, Nos. 80B–10472–73 (S.D. N.Y., Aug. 14, 1980) [hereinafter "Tr."]. At the hearing, the judge made findings of fact and conclusions of law on the record and, by order dated August 20, 1980, denied Penn-Dixie's motion to disqualify Midwest and granted Midwest's cross-motion. Notice of the instant appeal was filed by Penn-Dixie the same day.

This appeal presents the following issues: (1) does Penn-Dixie have standing, as a "party in interest" under section 1102(c), to challenge Midwest's appointment to the Equity Committee, and (2) if so, did the Bankruptcy Court properly find that the Committee, with the inclusion of Midwest as one of the seven largest equity shareholders of Penn-Dixie, could adequately represent the

---

1. Section 151102(b), which, pursuant to 11 U.S.C. §§ 1501(2) and 15103(f), replaces section 1102(a) in the Southern District of New York, provides:

    On request of a party in interest [,] the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The United States trustee shall appoint any such committee.

    Section 1102(b)(2) provides:

    A committee of equity security holders appointed under [section 151102(b)] shall ordi-

narily consist of the persons, willing to serve, that hold the seven largest amounts of equity securities of the debtor of the kinds represented on such committee.

2. The SEC was a party to the proceedings in the bankruptcy court pursuant to 11 U.S.C. § 1109(a), and it has filed a brief with this Court as nominal appellee. *See In re Imperial "400" National, Inc.*, 432 F.2d 232, 234 (3d Cir. 1970). None of the parties has objected to this procedure.

interests of the other Penn-Dixie equity security holders.

## DISCUSSION

*Standard of Review*

■■■ The Court must resolve one preliminary issue before reaching the issues stated above. Midwest correctly points out that the district court cannot set aside the findings of fact of a bankruptcy judge unless "clearly erroneous." *See* Rules of Bankruptcy Procedure 810; *Slodov v. United States,* 552 F.2d 159, 162 (6th Cir. 1977), *rev'd on other grounds,* 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978). Of course, the district court is free to reach its own conclusions of law. *See In re Cabezal Supermarket, Inc.,* 406 F.Supp. 345, 348 n.2 (D.N.D.1976). Furthermore, the district court is not bound by the clearly erroneous standard when reviewing the bankruptcy court's application of a legal standard to facts reasonably found. The same rule holds with respect to an ultimate finding of fact—that is, a legal inference drawn from other facts or the legal effect of certain transactions or events. *See In re Mid-Center Redevelopment Corp.,* 383 F.Supp. 954, 957–58 (D.N.J.1974). In the instant appeal, the standing issue is purely an issue of law and the Court will make an independent judgment. The second issue involves an ultimate finding of fact because the bankruptcy court first found facts upon which it based its determination of whether the membership of the Committee, including Midwest, was "representative of the different claims or interests to be represented." 11 U.S.C. § 1102(c). Thus, on this second issue, the Court will not disturb the bank-

ruptcy judge's initial findings of fact unless they are clearly erroneous but will reach an independent judgment with respect to whether those facts demonstrate that the Committee membership is not representative.

*Standing*

Under section 1102(c) of the Bankruptcy Code, the bankruptcy court may alter the size or membership of the equity security holders committee "[o]n request of a party in interest and after notice and a hearing." Despite the language of section 1109(b) that "[a] party in interest, including the debtor . . . may raise and may appear and be heard on any issue in a case under . . . chapter [11]," such as this one, Judge Lifland held that Penn-Dixie did not have the requisite standing to challenge the Committee's composition. The court stated:

[T]he non-uniform concept of a party in interest has to be realistically applied in light of the aims and goals of a particular matter at issue.

Here we have membership of a creditors [*sic*] committee which is charged with negotiating with a debtor. It's been called into question, the membership of that committee, by the very party who is going to be negotiating with them.

I truly don't think that [the] debtor has standing for that purpose.

Tr. at 41–42. The court stated further that "the debtor, in . . . a quasi adversarial situation, and I believe this is a quasi adversarial situation, should not be permitted to have a substantial say in who it is going to deal with." Tr. at 44.[3]

---

3. The bankruptcy court relied upon 11 U.S.C. § 1103, which illustrates the adversarial nature of the relationship between the debtor and the Committee, for this proposition.

Section 1103(c) provides:

    A committee appointed under section 1102 of this title may—

    (1) consult with the trustee or debtor in possession concerning the administration of the case;

    (2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and

the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

    (3) participate in the formulation of a plan, advise those represented by such committee of such committee's recommendations as to any plan formulated, and collect and file with the court acceptances of a plan;

    (4) request the appointment of a trustee or examiner under section 1104 of this title, if a trustee or examiner, as the case may be, has not previously been appointed under this chapter in the case; and

■ The court apparently believed that it had discretionary authority to override the express language of section 1109(b). *See* Tr. at 42. Some support for this position can be found in the legislative history to the Bankruptcy Code, although Judge Lifland discounted its persuasiveness. *See* Tr. at 44. Senator DeConcini, who exercised considerable influence over the enactment of the Code in 1978, stated, with respect to the phrase "party in interest": "Rules of bankruptcy procedure or court decisions will determine who is a party in interest for the particular purposes of the provision in question." 124 Cong.Rec. S17407 (daily ed. Oct. 6, 1978); *see id.* at H11090 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards to the same effect). In the exercise of this perceived discretion, the court concluded that Penn-Dixie was not a party in interest for the purpose of challenging the make-up of the Equity Committee, reasoning that to permit the debtor's participation in the selection of the Committee's membership would encourage the debtor to seek to place only its supporters on the Committee and to remove those security holders potentially adverse to its interests.

This Court disagrees with Judge Lifland's interpretation of the phrase "party in interest." Section 1109(b) is derived from former section 206 of chapter X of the Bankruptcy Act of 1898, 11 U.S.C. § 606 (repealed), which provided that "[t]he debtor ... shall have the right to be heard on all matters arising in a proceeding under ... chapter [X]." Chapter X is the predecessor to chapter 11, and it is clear that Congress intended section 1109(b) to carry forward an absolute right to be heard on any issue arising in a chapter 11 reorganization. *See* 124 Cong.Rec. S17419 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini); *id.* at H11102 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards); 5 Collier's *Bankruptcy* ¶ 1109.-02[2]–[3]. *See also In re Duplan*, 450 F.Supp. 790 (S.D.N.Y.), *appeal dismissed on other grounds*, 591 F.2d 139 (2d Cir. 1978). This construction makes sense in light of

the obvious purpose of an equity security holders committee to represent the interests of *all* equity shareholders. Thus, if an entity involved in the proceedings, such as one of those enumerated in section 1109(b), has information relating to this purpose, it should be allowed to present that information to the court. The debtor is in an especially good position to assist the court in this regard, because it presumably knows a great deal about its major shareholders. Indeed, this is precisely what occurred in the instant case; Penn-Dixie's concerns about Midwest, whether or not well-founded, should certainly have been brought before the bankruptcy court.

■ The bankruptcy judge expressed his concern that the debtor's self-interest would color its participation in the formation and conduct of the Committee. Of course the debtor is self-interested; Penn-Dixie has not attempted to hide that in this case. But section 1102(c) provides only that "[o]n request ... the court *may*" alter the Committee's membership. Thus, because the bankruptcy judge is not bound to accept the debtor's objections to the Committee's composition, the debtor has no authority unilaterally to effect any changes. Moreover, section 1102(c) provides an additional safeguard against overreaching by any interested party by explicitly setting forth a standard which the bankruptcy court must apply when exercising its discretion to alter the Committee's membership; namely, whether the Committee is representative of the various claims and interests to be represented. It is highly unlikely, therefore, that a debtor could have an undue influence grounded on purely selfish reasons on the size and membership of the Equity Committee. In short, although the bankruptcy court has broad discretion to oversee and alter the make-up of the Committee when necessary to ensure that it fairly represents all equity shareholders of the debtor, it does not have discretion to bar a party, who is a "party in interest" under section 1109(b), from raising an objection to that make-up.[4]

---

(5) perform such other services as are in the interest of those represented.

4. The bankruptcy court also relied on the recent case of *In re Kutner*, 3 B.R. 422 (Bkrtcy.

*Midwest as a Member of the Equity Committee*

■ Penn-Dixie asserts that Midwest's participation on the Equity Committee presents an actual conflict of interest, because Midwest is a Penn-Dixie shareholder actively seeking control of that corporation. Penn-Dixie argues, therefore, that Midwest will seek to lower the price of Penn-Dixie's shares to facilitate their acquisition, whereas the other shareholders will seek to maximize the value of their equity. If so, Midwest's economic interest is diametrically opposed to that of the other shareholders, and it would be unable to represent them as a fiduciary. The Court agrees that Midwest has a self-interest in the outcome of the reorganization. The question remains whether this self-interest is significant enough to disqualify Midwest from sitting on the Equity Committee.

Despite its finding that Penn-Dixie lacked standing under section 1102(c) to seek a change in membership on the Equity Committee, the bankruptcy court considered the merits of the cross-motions, and made the following findings of fact: (1) Midwest is one of Penn-Dixie's seven largest equity shareholders, Tr. at 36–37; (2) it is purely speculative whether Midwest will attempt to misuse confidential "inside" information obtained as a member of the Committee, or otherwise to breach its fiduciary obligations to the other shareholders, Tr. at 58; and (3) there are ample provisions in section 107 of the Bankruptcy Code and Rule 918 of the Rules of Bankruptcy Procedure to protect against the misuse of confidential information or potential breaches of fiduciary duties. Tr. at 17, 22,

42–43. Accordingly, the court decided not to change the membership of the Committee, because the evidence did not show that the Committee, Midwest included, was not representative of the class of equity shareholders. This Court agrees, and thus despite its conclusion that the bankruptcy court erred on the standing issue, the order below should be affirmed on the merits.

The Court finds that the bankruptcy court's findings of fact are not clearly erroneous and thus must be affirmed. Penn-Dixie produced no evidence at the hearing to persuade Judge Lifland that its charges of Midwest's future misconduct were anything more than speculative.[5] It was also unable to refute the judge's finding that protective measures were available; indeed, its counsel admitted the parties could resolve that problem. Tr. at 23. Moreover, although Penn-Dixie claims that Midwest could wield its authority on the Committee in any number of ways to manipulate the reorganization proceedings in its own self-interest, it fails to suggest to this Court any examples of what those ways might be. Judge Lifland did not ignore the evidence of Midwest's past conduct and expressed intentions, nor did he guarantee Penn-Dixie that Midwest would never seek to gain control. He simply found, in his discretion under section 1102(c), that this evidence was not sufficient to demonstrate that the Equity Committee, with Midwest as one of its five members, was not representative of the interests of the equity shareholders as a whole. This is an issue that can only be resolved by reference to the facts of each particular case. Here, the Court agrees

---

N.D.Tex.1980). *Kutner,* however, offers little guidance to this Court, since it involved the question of whether a trustee under chapter 13 of the Bankruptcy Code, which relates to the adjustment of debts of individuals with regular income, has standing to seek the conversion of a chapter 13 case into a liquidation proceeding under chapter 7. In light of the rather restricted rights of a chapter 13 trustee enumerated in section 1302(b)(2), the court held that the trustee had no standing. In the present case, to the contrary, section 1109(b) confers express participatory rights upon a debtor involved in a chapter 11 reorganization.

5. Subsequent to the filing of this appeal, Midwest has undertaken not to trade in Penn-Dixie stock while it serves as a member of the Equity Committee. Answering Brief of Appellee Midwest Rubber Reclaiming Co., Exhibit 1 (filed Sept. 17, 1980) (letter of Morris Weissman, President of Midwest, to Laura Corsell, counsel to the SEC, dated September 9, 1980). This further supports the bankruptcy court's finding that the debtor's charges of future misconduct were speculative, although it is not, of course, an assurance on Midwest's part that it will not trade in Penn-Dixie stock after it serves as a member of the Committee.

that the facts found by the bankruptcy judge support his ultimate conclusion.

## CONCLUSION

Accordingly, the Order of the Honorable Burton R. Lifland, Bankruptcy Judge, entitled "Order Denying Debtors' Motion to Disqualify Midwest Rubber Reclaiming Co. from Service on Equity Security Holders' Committee" and dated August 20, 1980, is affirmed. Rules of Bankruptcy Procedure 810.

So ordered.