In re JOHNS–MANVILLE CORPORATION, et al., Debtors.

Carl M. ALBERO, Morton Macks, et al., Appellants,

v.

JOHNS–MANVILLE CORPORATION, the Official Committee of Unsecured Creditors, the United States Trustee, the Official Committee of Asbestos Related Litigants and/or Creditors, and the Legal Representative for Future Claimants, Appellees.

Nos. 86 Civ. 8164 (SWK), 86 Civ. 8199 (SWK), 86 Civ. 8200 (SWK) and 86 Civ. 8201 (SWK).

United States District Court, S.D. New York.

Nov. 20, 1986.

Kronish, Lieb, Weiner and Hellman, New York City by Richard Lieb, Preston Towber, for the Common Shareholders.

Hahn and Hessen, New York City by George A. Hahn, Barry M. Schkolnick, for the Preferred Shareholders.

Caplin and Drysdale, New York City by Elihu Inselbuch, for the Official Committee of Asbestos Related Litigants and/or Creditors.

Milbank, Tweed, Hadley and McCloy, New York City by John J. Jerome, John G. Gellene, David P. Wohabe, for the Committee of Unsecured Creditors.

Levin and Weintraub and Crames by Herbert Edelman, Davis Polk and Wardwell, New York City by L. Gordon Harriss, for Johns-Manville Corp.

Fried, Frank, Harris, Shriver and Jacobson, New York City by Matthew Gluck, for the Legal Representative for Future Claimants.

United States Trustee, New York City by Harold Jones.

Securities and Exchange Com'n, Washington, D.C. by Daniel L. Goelzer, Richard A. Kirby, Batya Roth.

KRAM, District Judge.

■ The appellants in these consolidated appeals [1] are a group of approximately three hundred holders of common stock (the "common shareholders") of Johns-Manville Corporation ("Manville") and Morton J. Macks, a holder of preferred shares of Manville stock. Macks is representing the interests of preferred shareholders (the "preferred shareholders") of Manville stock in this litigation.[2] They appeal from two

---

1. Judge Weinfeld granted appellants' application for an expedited appeal on October 23, 1986.

2. The Securities and Exchange Commission ("SEC") filed a brief in support of the appel-

lants. Although the SEC has standing to be heard in a corporate reorganization proceeding in the first instance, it does not have standing to appeal. 11 U.S.C. § 1109(a). It may, however, participate in an appeal taken by a party in

separate orders of the bankruptcy court, each dated October 9, 1986, which denied their motions to appoint two official committees, pursuant to Section 151102 of the Bankruptcy Code,[3] to represent the interests of holders of common and preferred Manville stock.[4] Aligned as appellees are the Official Committee of Unsecured Creditors, the United States Trustee, the Legal Representative for Future Claimants, Johns-Manville Corporation, and the Official Committee of Asbestos Related Litigants and/or Creditors.[5]

## I. *The Scope of Review of the Bankruptcy Court's Orders*

### A. *Findings of Fact*

■ According to 28 U.S.C. § 157(b)(1) and 28 U.S.C. § 158(c), a bankruptcy court's decision in a "core proceeding" is subject to review by a district court in the same manner that appeals from district courts are reviewed by courts of appeals. A "core proceeding" includes "matters concerning the administration of the estate". 28 U.S.C. § 157(b)(2)(A). The appointment of a committee to represent the equity stockholders of a bankrupt company falls within this category. This Court's review of the bankruptcy court's decision is thus governed by Bankruptcy Rule 8013, which accords the findings of a bankruptcy judge the same weight given to the findings of a district judge under Fed.R.Civ.P. 52.

Rule 8013 states:

On an appeal the district court ... may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or re-

mand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

It is well settled that a bankruptcy judge's findings of fact are binding on the reviewing court unless clearly erroneous. *In re Emergency Beacon Corp.,* 52 B.R. 979, 987 (S.D.N.Y.1985), *aff'd,* 790 F.2d 285 (2d Cir. 1986); *In re Tesmetges,* 47 B.R. 385, 388 (E.D.N.Y.1984); *In re Chin,* 47 B.R. 894, 897 (S.D.N.Y.1984). *See In re Hygrade Envelope Corp.,* 366 F.2d 584, 588 (2d Cir. 1966). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). While a reviewing court may search the entire record in assessing whether findings of fact are clearly erroneous, *see Anderson v. Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985), a district court cannot set the bankruptcy court's findings of fact aside if the record reveals a reasonable basis for them. *In re Mid-Center Redevelopment Corp.,* 383 F.Supp. 954, 958 (D.N.J.1974).

■ In this case, a number of other factors affect the scope of review of the bankruptcy court's findings of fact. First, only two documents in the record contain sworn statements of fact: an affidavit by the common shareholders' attorney and a

---

interest. *In re Johns-Manville Corp.,* 801 F.2d 60, 61, n. 2 (2d Cir.1986).

3. Section 1102(a)(2) of the Bankruptcy Code authorizes the bankruptcy court to appoint an official committee to represent equity holders in a reorganization. In the Southern District, however, Chapter 15 of the Bankruptcy Code applies. 11 U.S.C. § 1501(2). Section 151102(b) authorizes a bankruptcy trustee to appoint an equity committee if the bankruptcy court grants a motion to have one appointed. The standards for the appointment of an equity committee are the same as in Section 1102.

4. The record on appeal as filed with the Court did not include the order denying the preferred shareholders' motion to form a separate committee. It was, however, provided to the Court on its request by attorneys for Morton Macks.

5. The Court, after examining the briefs and record on appeal, found that oral argument was not necessary. *See* Bankruptcy Rule 8012. The record contains the transcript of the extensive oral argument on the motions before the bankruptcy judge. All the issues on appeal were adequately briefed and oral argument was not necessary to illuminate the issues.

portion of a deposition of a Manville officer. The bankruptcy court did not hold an evidentiary hearing, nor did it cite any documentary evidence in making its ruling. While it may be appropriate for a bankruptcy court to rely on its accumulated knowledge of a case in rendering its decision, the court should indicate the portions of its knowledge upon which it relied. *In re Johns-Manville Corp.*, 801 F.2d 60, 68 (2d Cir.1986) (motion for summary judgment). In the absence of a factually based record and citations to the sources upon which the bankruptcy court relied, it is difficult for this Court to apply the clearly erroneous standard.

The absence of a fully developed factual record in this case is detrimental to the appellants, because the burden of demonstrating the need for adequate representation under Section 151102 is borne, in the first instance, by the party seeking appointment.[6] *In re Beker Industries Corp.*, 55 B.R. 945, 949, (Bankr.S.D.N.Y.1985). *See In re Johns-Manville*, 38 B.R. 331, 332 (S.D.N.Y.1983) (shareholders made no showing that appointment of single equity committee to represent the interests of common and preferred shareholders would prejudice them). The common shareholders did not seek an evidentiary hearing on the motion to appoint official committees.

Second, the bankruptcy court's orders denying the motions to appoint separate common and preferred shareholders committees were prepared and submitted to the court by the prevailing parties. The court adopted the proposed findings and made only minor changes. The findings were in the form of conclusory statements and were not supported by citation to the record. The Supreme Court has "criticized courts for their verbatim adoption of findings of fact prepared by prevailing parties, particularly when those findings have taken the form of conclusory statements unsupported by citation to the record". *Anderson*, 470 U.S. at 572, 105 S.Ct. at 1511. Nevertheless, "even when the trial

judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous". *Id.* Thus, this Court must still apply the clearly erroneous test to the bankruptcy court's findings.

Third, it is clear from the record that the bankruptcy judge's factual findings are incomplete, and exclude relevant facts. A reviewing court may make additional findings when there is no dispute as to the facts, *In re Osborne*, 42 B.R. 988, 995 (W.D.Wisc.1984), and when those findings do not contradict conclusions of the bankruptcy court which the reviewing court has accepted. *In re Neis*, 723 F.2d 584, 589 (7th Cir.1983). This Court can thus supplement the bankruptcy court's factual findings when appropriate.

Fourth, none of the bankruptcy judge's findings are based on credibility determinations. Although greater deference is to be paid to findings based on credibility determinations, findings of fact based on credibility determinations are still subject to the clearly erroneous standard. *Anderson*, 470 U.S. at 574, 105 S.Ct. at 1512.

### B. *Conclusions of Law*

█ The bankruptcy court's legal conclusions are "subject to plenary review". *In re Missionary Baptist Foundation of America*, 712 F.2d 206, 209 (5th Cir.1983); *In re Tesmetges*, 47 B.R. at 388; *In re Levine*, 32 B.R. 742, 743 (S.D.N.Y.1983); *In re Penn-Dixie Industries, Inc.*, 9 B.R. 936, 938 (S.D.N.Y.1981). In addition, the clearly erroneous rule does not apply to "mixed questions of fact and law". *In re Levine*, 32 B.R. at 743. Thus, the clearly erroneous rule does not apply when a finding of fact is premised on an improper legal standard, *In re Missionary Baptist Foundation*, 712 F.2d at 209, or when the finding is based on the application of law to facts undisputed or reasonably found. *In re Hygrade*, 366 F.2d at 588; *In re Mid-Center Redevelopment*, 383 F.Supp. at 958; *In re Penn-Dixie*, 9 B.R. at 938.

---

6. The common shareholders assert that the facts are undisputed. However, they do not state

what these facts are or cite the portion of the record in which they appear.

### C. Abuse of Discretion

██ The terms of Section 151102(b) vest the bankruptcy court with discretion to appoint a committee of equity holders:

> On request of a party in interest . . . the court may order the appointment of additional committees of creditors of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. . . .

11 U.S.C. 151102(b). "The statute affords no test of adequate representation, leaving the bankruptcy courts with discretion to examine the facts of each case to determine if additional committees are warranted." *In re Beker*, 55 B.R. at 948. *See In re Johns-Manville*, 38 B.R. at 331 (bankruptcy judge did not abuse his discretion in failing to appoint separate equity committees); *In re Penn-Dixie Industries, Inc.*, 9 B.R. 941, 943 (S.D.N.Y.1981) (the court may order the creation of an equity committee).

The structure of Section 151102 indicates that Congress intended to give a bankruptcy judge the discretion to appoint an equity committee. While Section 151102(b) states that a court *may* appoint an equity committee, Section 151102(a) *requires* the court to appoint an official committee to represent unsecured creditors. Thus, when Congress intended to mandate the appointment of a committee, it made its intention clear. Furthermore, "Subsection (a) requires the court to appoint at least one committee. That committee is to be composed of creditors holding unsecured claims. The Court is authorized to appoint such additional committees as are necessary to assure adequate representation of creditors and equity security holders. Such committee is to be composed of creditors and equity security holders." H.R.Rep. No. 595, 95th Cong., 1st Sess. 401 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6357.[7]

Since a bankruptcy judge has discretion to appoint an equity committee, his decision will not be set aside absent an abuse of that discretion. *See In re Hawley Coal Mining Corp.*, 47 B.R. 392, 394 (S.D.W.Va.

1984); *In re American Beef Packers, Inc.*, 457 F.Supp. 313, 315 (D.Neb.1978); *In re Wooding*, 390 F.Supp. 451, 453 (D.Kan. 1974). A bankruptcy judge may abuse this discretion by failing to apply proper legal standards. *In re Matter of First Colonial Corp. of America*, 544 F.2d 1291, 1298 (5th Cir.), *cert. den.*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977).

## II. The Appropriate Legal Standard

### A. Case Law

According to Section 151102(b), a bankruptcy judge may appoint an official committee to represent equity holders, if necessary, to assure them adequate representation. *In re Beker*, 55 B.R. at 948. "The statute affords no test of adequate representation, leaving the bankruptcy courts with discretion to examine the facts of each case to determine if additional committees are warranted." *Id.*

Because the statutory focus is on adequacy of representation, a number of guidelines have developed to determine when an official committee is necessary to insure that shareholders' interests will be adequately represented. The first consideration is the number of shareholders. When the debt is widely held, official committee representation is usually necessary to insure that the shareholders are adequately represented. *Id.* at 948–949. Although some shareholders might have the resources to protect their own interests, the shareholders—in contrast to official committee members—do not have a fiduciary duty to represent the interests of other shareholders. *Id.* at 949. Another guideline is the complexity of the case. Official committee status might be necessary, for example, when the shareholders are expected to actively participate in the case, rather than merely vote on a reorganization plan. *Id.* A third standard is whether "the cost of the additional committee . . . significantly outweighs the concern for adequate representation. . . ." *Id. See In re Emons*

---

7. Although this portion of the House Report deals with Section 1102(a) of the Bankruptcy Code, the same principles apply to Section 151102. *See* n. 3, *supra.*

*Industries, Inc.*, 50 B.R. 692, 694 (Bankr.S. D.N.Y.1985) (equity committee not appropriate when it appears debtor is insolvent). While the court in *Beker* was concerned about the financial cost of a committee, the cost-benefit logic would seem to apply even where the "costs" are intangible, such as the costs caused by a further delay in payment to "innocent injured people, some of whom are survivors of deceased persons, whose recoveries have already been unduly delayed by the reorganization proceedings". *In re Johns-Manville Corp.*, 801 F.2d at 70 (Oakes, J., dissenting).

### B. *Congressional Intent*

Congressional intent in passing legislation allowing for equity committees is also illuminating. One of the purposes of the legislation was "to counteract the natural tendency of a debtor in distress to pacify large creditors, with whom the debtor would expect to do business, at the expense of small and scattered public investors." S.Rep. No. 989, 95th Cong.2d Sess. 10 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5796. The Report continues:

> The Committee believes that it should be emphasized that investor protection is most critical when the company in which the public invested is in financial difficulties and is forced to seek relief under the bankruptcy laws. A fair and equitable reorganization, as provided in the bill, is literally the last clear chance to conserve for them values that corporate financial stress or insolvency have placed in jeopardy. As public investors are likely to be junior or subordinated creditors or debtholders, it is essential for them to have legislative assurance that their interests will be protected. Such assurance should not be left to a plan negotiated by a debtor in distress and senior or institutional debtors who will have their own best interest to look after.

*Id.*

Congress apparently agrees with the Second Circuit's view that "the stockholders should have the right to be adequately represented in the conduct of the debtor's affairs, especially in such an important matter as the reorganization of the debtor". *In re Bush Terminal Corp.*, 78 F.2d 662, 664 (2d Cir.1935).

Congress' desire to protect shareholders in reorganization proceedings was not strong enough, however, to mandate the creation of equity committees. The legislative history indicates only that a bankruptcy judge should be sensitive to the interests of equity holders in a reorganization proceeding.

### C. *The Role of Official Committees*

A bankruptcy court's discretion should also be guided by the official committee's envisioned role in the reorganization:

> [E]quity security holders' committees ... will be the primary negotiating bodies for the formulation of the plan of reorganization. They will represent the various classes of creditors and equity security holders from which they are selected. They will also provide supervision of the debtor in possession and of the trustee, and will protect their constituents' interests.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 401 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6357. *See In re Saxon Industries, Inc.*, 39 B.R. 945, 947 (Bankr.S. D.N.Y.1984); *In re Penn-Dixie*, 9 B.R. at 941. An equity committee has a fiduciary responsibility to equity holders. *In re Penn-Dixie*, 9 B.R. 941, 944.

Section 1103(c) of the Bankruptcy Code specifies the duties of an equity committee. Such a committee may: (1) consult with the debtor concerning the administration of the case; (2) investigate the acts, conduct, assets, liabilities, financial condition, and operation of the debtor's business and the desirability of the continuance of such business, and any other relevant matter; (3) participate in the formulation of a plan and advise those represented by the committee of the committee's recommendations as to any plan formulated; (4) request the appointment of a trustee; and (5) perform

such other services as are in the interest of those represented.

Perhaps the most important aspect of a committee's role is to negotiate the terms of a reorganization. *In re Saxon*, 39 B.R. at 947. "[T]he power to exercise a voice in [the] formulation [of a plan] is clearly a desideratum under the program laid down by the Bankruptcy Code...." *In re Johns-Manville*, 801 F.2d at 62.

While an equity committee has a "wide and important array of authority and responsibility ... [and] the Bankruptcy Code contemplates a significant and central role for committees in the scheme of a business reorganization", *In re Penn-Dixie*, 9 B.R. 941, 944, a committee's powers are essentially procedural. The existence of an equity committee does not guarantee a favorable result for equity holders in a reorganization, it only guarantees that those interests will be adequately represented. An equity committee can only represent and act for the furtherance of equity holders' interests; it cannot guarantee favorable treatment for those interests. Thus, even when a committee which has participated fully in a reorganization does not approve the terms of a reorganization, "the Bankruptcy Court may confirm a plan with or without the acquiescence of all classes of claims". *In re Johns-Manville*, 801 F.2d at 62. The official committee's procedural role is further limited, since Section 1103(c) does not mandate that all committees shall be involved in all negotiations over the formulation of a plan, or that an official committee's suggested plan must be seriously considered.

As a function of its procedural role, the potential effectiveness of an official committee is, to a large degree, determined by the stage a reorganization proceeding has reached. Since one of its most important functions is to negotiate a reorganization plan, a committee will most effectively exercise its responsibilities at the beginning

of a reorganization, prior to the formulation of a plan. By the time a reorganization plan has been submitted to the various classes of interest for voting, however, much of the opportunity for a committee to participate in a reorganization will have passed.

III. *Review of the Bankruptcy Court's Rulings*

A. *Findings of Fact*

The bankruptcy court's findings of fact in its orders denying motions to appoint common and preferred shareholder committees are virtually identical. On February 13, 1983, the court appointed a single official committee to represent the interests of the preferred and common shareholders (the "Equity Committee") in the Manville reorganization. In April, 1986, the Equity Committee filed a motion for an order disbanding itself and for the appointment of separate official committees to represent the preferred shareholders and the common shareholders. On July 31, 1986, the bankruptcy court disbanded the Equity Committee for all purposes except to continue an adversary proceeding regarding a shareholders meeting and to conduct any other matters to be determined by the court on separate applications of the Equity Committee.[8] The Court found that from its creation until its disbandment in July, 1986, the Equity Committee had actively participated in the reorganization. Counsel for the Equity Committee had incurred, by that time, fees and expenses in excess of $2 million. The Equity Committee also had incurred significant brokers' and accountants' expenses.

After a long and arduous negotiating process, Manville filed its second reorganization plan with the bankruptcy court on August 22, 1986. The bankruptcy court approved Manville's disclosure statement on August 28, 1986. On September 5, 1986, Manville commenced the mailing of

---

**8.** Although the bankruptcy court did not so find, it is clear from the record that the Equity Committee moved to disband itself because it could not simultaneously represent the interests of the preferred and common shareholders, which were then in conflict. The Equity Committee felt it could no longer function because of this conflict as of January 1986.

the proposed plan and disclosure statement to all parties, including the equity holders, who are to vote on the proposed plan. The bankruptcy court's findings do not include the undisputed fact that a letter from the Equity Committee opposing the plan was included in the mailings, as was a letter from an unofficial committee of preferred shareholders in support of the plan.

Pursuant to the plan, the value of outstanding Manville common stock would be reduced by between 94 and 98 percent of the value of their shares. Common shareholders could lose all the value of their shares if they do not approve the plan. Preferred shareholders' stock would be subject to a 70 percent dilution in value.[9] A hearing for confirmation of the proposed plan is scheduled for December 15, 1986. The bankruptcy court found that the appointment of official equity committees might lead to a delay in the confirmation process.

The bankruptcy court also made findings regarding the extent to which the equity interests are currently being represented. Common shareholders' interests are represented by a group of approximately ten percent of the outstanding shares of common stock. This group is represented by counsel experienced with bankruptcy law in general, and with this case in particular, and who have actively negotiated with the debtors and representatives of creditors since June, 1986. Since January, 1986, an unofficial committee of preferred shareholders has appeared in the case, participated in plan negotiations, and ultimately secured an improvement in the treatment of preferred shareholders in the proposed plan. The court noted that other unofficial committees, such as those representing the asbestos property damage claimants, had effectively participated in the reorganization negotiations.

Although not mentioned in the bankruptcy court's findings, it is undisputed in the record that in a reorganization plan proposed in August, 1985, and filed by Manville with the bankruptcy court in February, 1986, the value of common stock would have been diluted by at least 50, and as much as 80, percent. However, the official committee of unsecured creditors objected to this plan, demanding to be paid post-petition interest. In April, 1986, further negotiations with the unsecured committee led to agreement on the current plan, which would transfer 11 million common shares to the unsecured creditors in order to pay post-petition interest. This transfer of common shares would result in the dilution of common shareholders' value up to at least 94 percent. It is clear from the record that "[u]nder protest the Equity Committee had been cut out of the negotiations that led to [this] plan...." *In re Johns-Manville*, 801 F.2d at 62–63. The group representing the common shareholders negotiated, from June to August, 1986, with the other committees for an improvement in their treatment, but they failed to receive better treatment.

Based on this Court's review of the entire record in this case, the bankruptcy court's findings of fact, as supplemented, are not clearly erroneous.

### B. *Legal Conclusions.*

The bankruptcy court's key legal ruling was that the appointment of an official committee to represent the interests of common and preferred shareholders was within its discretion. The court's primary ground for exercising its discretion against appointing official committees was that the equity holders could effectively participate in the final stages of the reorganization proceedings without official committee representation. The secondary reason was that the appointment of official committees would unduly delay the confirmation of the plan.

### 1. *Adequacy of Representation*

■ As described earlier, the proper legal standard to apply in determining

---

**9.** Such dilution of the shares would occur as a result of a transfer of currently outstanding stock from current shareholders to other parties

in interest, as well as the issuance of additional common and preferred stock of Manville.

whether to appoint an official committee for equity shareholders is whether an official committee is necessary to provide adequate representation of the equity holders' interests. In its order denying the common share holders' motion, the bankruptcy court applied the wrong standard, requiring a showing of "a critical degree of prejudice". Nevertheless, this Court, in applying the correct legal standard, finds that the bankruptcy court's decision was not an abuse of discretion. The record shows the preferred and common shareholders' interests are adequately represented without official committees.

The Manville reorganization is in its final stages, and approaching confirmation. Much of an official committee's potential role in the reorganization has been completed. It is too late for a committee to exercise its most important function—negotiating a reorganization plan—as a reorganization plan has already been submitted to the bankruptcy court.[10]

It is also clear that unofficial groups have participated effectively in the reorganization thus far, and will continue to do so. They have negotiated with the official committees, and have achieved favorable positions for their interests. Moreover, the unofficial groups representing the equity holders are already engaged in the same activities that the purported official committee would assume: advising equity holders as to how to vote on the plan, negotiating to improve their treatment under the plan, preparing for the confirmation proceedings, and actively litigating on behalf of the equity holders. Furthermore, as the bankruptcy court indicated, Section 1109 of the Bankruptcy Code allows an interested party to appear and be heard on any matter, and Section 503(b) also allows a party who makes a substantial contribution to the bankruptcy proceeding to be reimbursed for expenses.

The appellants argue that this is not enough. They argue that, had they had the leverage of an official committee between June and August 1986, when they tried to renegotiate the terms of the current plan, they could have negotiated more favorable terms. However, the record indicates that the plan that was submitted in August, 1986, was the result of a long negotiating process in which the various parties in interest had made numerous concessions and compromises. Appellants make no showing that the parties would have been willing or able to make further changes in the plan even if the equity interests had been represented by official committees. The existence of an equity committee does not, under the Bankruptcy Code, guarantee a favorable result for equity interests. It only guarantees that equity interests will be adequately represented. In this case, they were adequately represented without the formation of an official committee.

Appellants also contend that the unofficial committees representing the interests of equity holders might cease activity at any time, or cease activity on behalf of all equity holders, and represent only their own interests. How ever, the record indicates that the unofficial committees have every intention of continuing to participate in the case, and that their activities will continue to be in the interests of all equity holders.

Finally, appellants contend that Sections 1109 and 503(b) of the Bankruptcy Code do not provide a class of interests with the same power or representation as an official committee. Section 1109 gives a party only the right to be heard on any matter. It does not grant a class of interests the same power as an equity committee, particularly the power to negotiate the terms of a plan. At the current stage of the proceeding, however, the most important function of disgruntled parties is their appearance at

---

10. As the debtor in the reorganization proceeding, Manville had the exclusive right, for the first 120 days of the reorganization, to file rehabilitation plans. However, Manville received several extensions prolonging the exclusive time period, and has been the only party throughout the reorganization entitled to file a reorganization plan. The official committees have not been allowed to submit proposed plans. *See In re Johns-Manville*, 801 F.2d at 62.

the confirmation hearing to argue against confirmation of the plan. The right to be heard is, at this point, as important a right as any right ascribed to an official committee. While all of an official committee's expenses can be reimbursed, an award of expenses to unofficial participants is discretionary with the court. *See* Section 503(b). The bankruptcy court, however, in finding (m) of its order denying the common shareholders' motion, has strongly implied that expenses incurred in connection with the confirmation proceedings will be reimbursed. Thus, absence of guaranteed reimbursement should not be an impediment to further participants in the reorganization.

A second basis for this Court's finding of adequate representation is that before the Equity Committee was disbanded, it actively participated—to the extent of $2 million in legal fees plus accountants' and investment bankers' expenses—in the Manville reorganization from its earliest stages. The record indicates the committee participated in plan negotiations and the other activities of an official committee.

The Court is disturbed by the fact that neither the Equity Committee nor any other representatives of the equity shareholders were involved in the April, 1986 negotiations which led to the further dilution of common shareholders' ownership rights from 50, to at least 94, percent. The common shareholders argue that if an official committee had been present at the negotiations, especially with the leverage of an official committee, they may have prevented the transfer of shares by arguing that post-petition interest to unsecured creditors was inappropriate under the Bankruptcy Code.

While the Court is sensitive to appellants' claims, they do not justify the appointment of an official committee. The remedy for any past impropriety which led to the current plan is not the appointment of an official committee at this juncture, as the Court has found that the equity interests are adequately represented. Equity holders will have the opportunity to raise their post-petition interest argument at the confirmation hearing.

### 2. *Delay in the Confirmation of the Plan*

■ In exercising its discretion, the bankruptcy court also relied on its finding that appointment of official committees would delay the confirmation of the plan. It is clear from the record that the appointment of official committees would delay the confirmation of the Manville reorganization. The Manville reorganization has been "one of the most complicated and difficult reorganizations in history ...". *In re Johns-Manville*, 801 F.2d at 69 (Oakes, J., dissenting). The bankruptcy judge clearly desires to complete the reorganization as quickly as possible.

This Court believes that, in this case, the bankruptcy court, in exercising its discretion, was justified in considering the delay which would be caused by the appointment of official committees. The court could, as discussed earlier, weigh the intangible costs of a delay against the benefit of additional representation for the equity interests. Nevertheless, this Court does not rest its ruling on the bankruptcy court's concern for delay. The Court's findings that the equity holders are currently adequately represented in the bankruptcy proceeding is sufficient to uphold the bankruptcy court's ruling.

### C. *Abuse of Discretion*

Based on the above, the Court finds that the bankruptcy judge did not abuse his discretion in refusing to appoint official committees to represent equity holders of Manville stock. As Judge Oakes wrote in his dissent in *In re Johns-Manville:*

The bankruptcy judge has been living with this reorganization for a long time. He is fully sensitive to the enormity of the problems imposed by billions of dollars of future claims, as well as by billions of dollars of present claims for personal injury, death and property damage—claims on a scale never before to hit the courts—as well as claims for puni-

tive damages that, given those that have so far been imposed in the tiny fraction of cases that have been decided, are staggering to say the least. I repeat, no more complex reorganization has ever come before any bankruptcy court, and I include the railroad reorganization of recent past as well as of yore. I would here, as seldom elsewhere, defer to the bankruptcy court's discretion.

801 F.2d at 70. This Court agrees. The orders of the bankruptcy court are affirmed. The clerk is ordered to close 86 Civ. 8614, 86 Civ. 8199, 86 Civ. 8200, and 86 Civ. 8201.

SO ORDERED.