**In the Matter of INTERCO INCORPORATED, et al., Debtors.**

**AD HOC BONDHOLDERS GROUP, Movant,**

v.

**INTERCO INCORPORATED, et al., Respondents.**

**No. 91–40442–172.**

United States Bankruptcy Court, E.D. Missouri, E.D.

June 5, 1992.

See also 140 B.R. 248.

Bryan, Cave, McPheeters & McRoberts, Gregory D. Willard, Lloyd A. Palans, John C. Boyle, Carl J. Spector, St. Louis, Mo., for debtors-in-possession.

Carole Neville, Milgrim, Thomajan & Lee, New York City, for Ad Hoc Bondholders Group.

Milton P. Goldfarb, Clayton, Mo., for Unsecured Creditors' Committee.

Steven Goldstein, St. Louis, Mo., Mark D. Brodsky, Saul E. Burian, New York City, for Official Committee of Unsecured Debenture Holders.

Steven N. Cousins, David L. Going, St. Louis, Mo., Michael J. Reilly, Michael J. Sage, Hebb & Gitlin, Hartford, Conn., for The Boatmen's Nat. Bank of St. Louis, as Trustee for the Medium Term Noteholders.

**ORDER**

JAMES J. BARTA, Bankruptcy Judge.

This Order addresses the "Motion of the Ad Hoc Bondholder Group for Order Pursuant to 11 U.S.C. §§ 105(a) and 1102(a)(2) Directing Appointment of a Separate Committee Representative of Rejecting Classes of Debenture Holders" (Motion Z–135).

This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and Local District Court Rule 29. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

I. *Background*

On January 24, 1991, Interco Incorporated and 30 affiliated entities ("Debtors") filed for relief under Chapter 11 of the United States Bankruptcy Code. The Debtors' Chapter 11 cases are being jointly administered for procedural purposes, pursuant to a January 25, 1991 Order of this Court.

The United States Trustee has appointed two official committees in these bankruptcy proceedings: the Official General Unsecured Creditors' Committee was appointed on February 6, 1991; and the Official Unsecured Debenture Holders' Committee was appointed on February 12, 1991. In addition, two unofficial constituent groups have actively participated in these proceedings: a consortium of secured bank lenders; and

a group referred to as the "Medium Term Noteholders," represented by Boatmen's National Bank as the indenture trustee. These entities, the official committees and the unofficial constituent groups, have appeared by Counsel at each of the weekly status conferences since the commencement of these cases, and have taken part in the numerous other proceedings in these cases by being represented by Counsel at hearings on contested matters or by filing responses to motions and other requests.

The Official Unsecured Debenture Holders' Committee (the "Official Committee") represents three classes of Interco unsecured debentures: (1) the "Senior Subordinated Debentures" which are senior to the other two classes and represent an estimated claim of $468.9 million; (2) the "Junior" or "Subordinated" Debentures which represent an estimated claim of $342.5 million; and (3) the "Junior" or "PIK Debentures" which are the most junior of the three classes and represent a claim of approximately $277.4 million. *See Debtors' Amended Disclosure Statement,* dated March 31, 1992, at 16–17; *Report of Examiner Sandra E. Mayerson,* filed October 24, 1991, at 142. These debentures were issued in connection with a certain prepetition recapitalization of the Debtors during an unsuccessful hostile takeover attempt in 1988. *See Report of Examiner,* 108–111, 142–145.

On January 24, 1992, Debtors filed their Disclosure Statement in Connection with Debtors' Joint Plan of Reorganization. The Disclosure Statement and Plan of Reorganization were amended on March 12, 1992 and again on March 31, 1992. The Disclosure Statement hearing was commenced on March 19, 1992. On March 24, 1992, this Court entered an Order that approved the Disclosure Statement, approved a solicitation package, and approved the form and manner of notice of the confirmation hearing and of related issues. A final hearing on the final amendments to the Disclosure Statement was held on April 2, 1992. At that hearing, the Court heard objections to the adequacy of the amendments to the Disclosure Statement, including those objections voiced by an individual

bondholder, Trendex Capital Management, a member of the Movant, Ad Hoc Group. The Court overruled the objections of Trendex on April 2, 1992, and approved the final amendments to the Disclosure Statement.

On May 12, 1992, Movant, the "Ad Hoc Bondholders Group" filed a "Motion and Memorandum of the Ad Hoc Bondholder Group for Order Pursuant to 11 U.S.C. §§ 105(a) and 1102(a)(2) Directing Appointment of a Separate Committee Representative of Rejecting Classes of Debenture Holders." The Movant requested an expedited hearing on this Motion, which this Court denied. The hearing on the Ad Hoc Group's motion was held on June 4, 1992. Counsel for the Movant appeared and announced that at least one of the Debenture Holders who had joined in filing this Motion, Buffalo Partners, had withdrawn as a member of the Ad Hoc Bondholders Group prior to the hearing. The members of the Ad Hoc Group were identified as: Trendex Capital Management Corp.; Chelonian Corporation; Daniel A. Dolcini; and Tortoise Corporation. Counsel for the Debtors announced that another member of the original Ad Hoc Group, Cypress Capital Management Corp. had subsequently indicated that it would agree to accept the proposed plan of reorganization. Counsel for the Ad Hoc Group stated that she had not received any indication from Cypress Capital that it did not wish to continue as a member of the Ad Hoc Group.

In addition to Debtors' Counsel, Counsel for the following entities appeared in opposition to the Ad Hoc Group's motion on June 4th: the Medium Term Noteholders; the United States Trustee, Eastern District of Missouri; the Secured Bank Group; and the Official General Unsecured Creditors' Committee. Although the Official Committee of Unsecured Debenture Holders took no position in support of or in opposition to the Ad Hoc Group's motion, it filed a written response that detailed several issues that would have to be addressed if the motion were to be granted. This Order is entered after consideration of the record as a whole, including the arguments presented at that hearing.

## II. *Discussion*

The appointment of an additional committee is governed by Section 1102(a) of Title 11 of the United States Code. That section directs, in pertinent part, that:

> On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure representation of creditors or of equity security holders.

11 U.S.C. § 1102(a)(2).

"The statute affords no test of adequate representation, leaving the bankruptcy courts with discretion to examine the facts of each case to determine if additional committees are warranted." *In re Beker Indus. Corp.*, 55 B.R. 945, 948 (Bankr. S.D.N.Y.1985). Courts have developed various non-exclusive factors to be considered when determining if an additional committee should be appointed. These factors include: "[c]onsiderations such as the ability of the committee to function, the nature of the case and the standing and desires of the various constituencies[.]" *In re Hills Stores, Co.*, 137 B.R. 4, 5–6 (Bankr. S.D.N.Y.1992) (citing *In re McClean Indus., Inc.*, 70 B.R. 852, 860 (Bankr.S.D.N.Y. 1987). "The potential added cost is not sufficient in itself to deprive the creditors of the formation of an additional committee if one is otherwise appropriate." *Id.* at 6. Nonetheless, a Court's exercise of discretion "gives rise to a concern for cost, since the appointment of additional committees is 'closely followed by applications to retain attorneys and accountants.'" *In re Beker*, 55 B.R. at 949 (quoting *In re Saxon Indus. Inc.*, 39 B.R. 945, 947 (Bankr.S.D.N.Y. 1984).

In addition, Courts have considered whether the "appointment of an additional committee at this point in the reorganization would not vindicate a prime function of a committee, to wit, assistance in the formulation of a plan of reorganization." *In re Sharon Steel Corp.*, 100 B.R. 767, 779 (Bankr.W.D.Pa.1989); *accord In re Johns–Manville Corp.*, 68 B.R. 155, 161 (S.D.N.Y. 1986), *appeal dismissed*, 824 F.2d 176 (2d Cir.1987) (stating: "As a function of its procedural role, the potential effectiveness of an official committee is, to a large degree, determined by the stage a reorganization proceeding has reached.")

Movant asserts that it is not adequately represented on the Official Committee because the members of the Official Committee have pledged their support to Debtors' Plan of Reorganization, and have urged acceptance of the Plan by debenture holders. The Ad Hoc Group contends that its members are among a number of debenture holders which have voted against or intend to vote against and object to Debtors' Plan.

"A motion under section 1102 should be made promptly." *In re Drexel Burnham Lambert Group, Inc.*, 118 B.R. 209, 211 (Bankr.S.D.N.Y.1990). "[T]he delay in submission of the request for a separate committee following the original filing of these proceedings [is] itself a factor to be considered in any decision." *In re Public Service Co. of New Hampshire*, 89 B.R. 1014, 1018 (Bankr.D.N.H.1988) ("P.S.N.H.").

The situation presented in these cases is not identical to the situations that existed in many of the cases cited above however. Apparently, the Ad Hoc Group here felt that the Official Committee of Unsecured Debenture Holders adequately represented it until the Official Committee decided to support Debtors' Plan. Even so, when the members of the Ad Hoc Group should have been aware of the Official Committee's position in support of the plan, they did not promptly submit a request for a separate official committee. The position of the Official Committee was made known publicly on April 2, 1992. On that date, counsel for the Movant, who at that time apparently represented only Trendex Capital Management, objected vigorously to Debtors' Amended Disclosure Statement and Amended Plan, while the Official Committee argued in support of the documents. It was not until May 12, 1992 that the Ad Hoc Group filed the motion asking for the appointment of a separate committee. Balloting on the proposed plan has commenced and is scheduled to end on June 4, 1992. The confirmation hearing is scheduled to

commence on June 25, 1992. The creation of a new official committee at this time would be disruptive to the orderly process of reorganization, would not reasonably ensure that any additional benefit will result to these estates, and would not provide any greater creditor protection than that which is available through the existing committees and constituent groups. "To belatedly interject a separate additional committee into these proceedings at the present state of this reorganization simply is not justified for [the] delay and disruption factors alone." *In re P.S.N.H.*, 89 B.R. at 1020.

Further, this Court notes that the Ad Hoc Group will not be without access to the Courts if a separate committee is not appointed. Section 1109 of the Bankruptcy Code enables all creditors to be heard on any issue. *In re Drexel Burnham*, 118 B.R. at 212. At this stage of the reorganization process, "the most important function of disgruntled parties is their appearance at the confirmation hearing to argue against confirmation of the plan." *In re Johns–Manville*, 68 B.R. at 163–164. The Ad Hoc Group can effectively participate in the final stages of the reorganization proceedings without official committee representation.

IT IS ORDERED that this hearing is concluded; and that for the reasons stated herein, the Movant's request for the appointment of a separate committee to represent certain rejecting Debenture Holders is DENIED; and that all other requests by the Movant and by all other parties who filed responses in this matter are DENIED.