In the Matter of LYTTON'S, Henry C. Lytton and Company, an Illinois Corporation, Debtor.

Appeal of CLUETT, PEABODY AND COMPANY, INC.

No. 86–2885.

United States Court of Appeals, Seventh Circuit.

Argued April 2, 1987.

Decided Oct. 15, 1987.

As Modified Jan. 14, 1988.

Jerome B. Meites, McDermott, Will & Emery, Chicago, Ill., for appellant.

Steven R. Radtke, Chill, Chill & Radtke, P.C., Chicago, Ill., for appellee.

Before WOOD, and CUDAHY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

Cluett, Peabody and Company ("Cluett") appeals from the district court's dismissal of its appeal from a bankruptcy court order on the grounds that the bankruptcy court order was not final and appealable. The bankruptcy court order had authorized the Lytton's, Henry C. Lytton and Company ("Lytton's") creditors' committee, appellee in this case, to attempt to join in litigation then pending in district court against Cluett on behalf of itself and the debtor, Lytton's, who elected not to pursue the litigation. Among other things, the order

also authorized a contingent fee schedule for the attorney who would represent the creditors' committee in the litigation, and approved the payment of $10,000 from the debtor's estate for costs of the litigation, with leave to seek additional expenses at a later time. Because we agree with the district court that the bankruptcy court order is interlocutory, we affirm the district court's dismissal of the appeal from that order.

## I. FACTUAL BACKGROUND

The facts of this case stem in part from Cluett's sale of Lytton's to L.H.L.C. Corporation ("LHLC") in a leveraged buyout transaction on February 4, 1983. Thirteen months later, Lytton's filed for bankruptcy under Chapter 11 of the Bankruptcy Code. The bankruptcy court appointed an official creditors' committee. On January 31, 1986, LHLC sued Cluett and Lytton's accountants Deloitte, Haskins & Sells ("Deloitte") in the Northern District of Illinois, alleging that Cluett had overvalued Lytton's inventory by over $2,700,000 and thereby fraudulently induced LHLC to purchase Lytton's.

Lytton's creditors' committee filed a petition with the bankruptcy court on February 28, 1986, requesting among other things to join in the LHLC litigation pending in district court against Cluett and Deloitte. After a hearing on the petition and Cluett's objections to that petition, the bankruptcy court on March 18, 1986, entered an order granting the petition. That order authorized the creditors' committee to seek to join in the LHLC litigation in its own name and on behalf of Lytton's (who had elected not to participate in the litigation); authorized the employment of Herbert Beigel, counsel to LHLC, to prosecute the litigation on a contingent fee basis; provided that Lytton's advance $10,000 to Beigel for expenses and costs incurred in the litigation, with an opportunity to apply to the court for later reimbursement; provided that Beigel make an accounting for all costs advanced; and stated that the proceeds of the litigation after payment of the contingent fee and expenses would be split ninety-five percent for Lytton's and five percent for LHLC. The order also contained a contingent fee schedule, under which Beigel would receive one-third of the first $500,000 of the gross proceeds of any recovery, twenty-five percent of the next $1,500,000, and fifteen percent of any recovery over $2,000,000.

Cluett, concerned that this authorization will severely diminish Lytton's estate, against which it holds the third largest priority administrative claim, attempted to appeal this bankruptcy court order to the district court under 28 U.S.C. § 158(a). On October 10, 1986, the district court dismissed the appeal for lack of jurisdiction on the ground that the bankruptcy court order was not final. The district court also denied Cluett's request for leave to file an interlocutory appeal.

## II. DISCUSSION

■ The only issue we need decide is whether the district court properly dismissed Cluett's appeal from the March 18, 1986 bankruptcy order for lack of finality. This court may only review final orders on bankruptcy appeals from a district court. 28 U.S.C. § 158(d); *see In re Morse Electric Co.*, 805 F.2d 262, 264 (7th Cir.1986); *In re County Management, Inc.*, 788 F.2d 311, 313 (5th Cir.1986); *In re American Colonial Broadcasting Corp.*, 758 F.2d 794, 800–01 (1st Cir.1985). We have jurisdiction over this appeal only if the orders of both the bankruptcy court and the district court are final. *Morse*, 805 F.2d at 264; *In re Stanton*, 766 F.2d 1283, 1285 (9th Cir. 1985); *In re Riggsby*, 745 F.2d 1153, 1154 (7th Cir.1984).[1] Thus if we hold that the district court properly determined that the bankruptcy court order was interlocutory,

---

**1.** *Riggsby* interpreted the precursor to 28 U.S.C. § 158(d), which was 28 U.S.C. § 1293(a). The latter section was in turn patterned after the general final order rule of 28 U.S.C. § 1291(a). Section 158(d) is nearly identical to previous § 1293(a), and we may use cases construing § 1293(a) in interpreting § 158(d). *County Management, Inc.*, 788 F.2d at 313 n. 2; *Stanton*, 766 F.2d at 1285 n. 3; *In re Goldblatt Bros., Inc.*, 758 F.2d 1248, 1250 n. 1 (7th Cir.1985).

we must dismiss this appeal for lack of jurisdiction.

Cluett cites *In re Gardner*, 810 F.2d 87, 91 (6th Cir.1987), in support of its argument that the bankruptcy court order was final. In *Gardner*, the bankruptcy court determined that there was no insurance coverage under a particular policy. The district court reversed on the question of insurance coverage, and remanded for further factual findings on the question of a possible fraudulent release. The Sixth Circuit held that the district court order was appealable "under the particular circumstances of [that] case," emphasizing that the district court's reversal of the bankruptcy court order on the legal issue of the interpretation of an insurance policy was dispositive, because if there was no insurance coverage, the questions of fact became "academic." *Id.* at 92. Cluett argues that the reasoning in *Gardner* is applicable to this case because questions of law as opposed to questions of fact are the determinative issues. We disagree that *Gardner* is apposite. The key issue in *Gardner* was whether a district court's remand of a final bankruptcy decision was a final order. That court's decision on that issue thus rested in part on an assumption that the bankruptcy court order was *final. Id.* at 91–92. In this case, however, we may not assume that the bankruptcy order itself is final. Indeed, as we discuss below, we conclude it is not final. We therefore need not reach the determinative issue of *Gardner*—whether the district court's order is final.

In determining whether the bankruptcy court's order was final, the district court analyzed each major component part of the order. We will do likewise.

*A. Authorization of Creditors' Committee to Join Pending Litigation*

■ Cluett argues that the bankruptcy court order's provision allowing the creditors' committee to join in the pending LHLC litigation was a final order.[2] Cluett contends that the district court erred in determining that that provision was not a final order on the grounds that it was an order *granting* the creditors' committee the right to join rather than *denying* it the right to intervene on behalf of the debtor. The district court recognized the Third Circuit case *In re Marin Motor Oil, Inc.*, 689 F.2d 445 (3d Cir.1982), *cert. denied*, 459 U.S. 1206, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983), and distinguished it by noting that *Marin Motor Oil* held that an order *denying* a creditors' committee's application to appear in litigation was a final order, but that this case dealt with an order *granting* the creditors' committee leave to enter the pending litigation. Cluett argues that the district court "ignored" the Third Circuit's later reaffirmation of *Marin Motor Oil* in *In re Amatex Corp.*, 755 F.2d 1034 (3d Cir.1985). There the court stated as follows:

> On appeal [in *Marin* ], we noted the general rule in this Circuit that an order denying a request to intervene is considered final and appealable.... In *Marin*, we went even further and held that in a bankruptcy proceeding, the district court's *grant* of a petition to intervene was also appealable.

*Amatex*, 755 F.2d at 1040 (emphasis in original).

*Amatex* is not inconsistent with the district court's interpretation of *Marin Motor Oil*, and the district court correctly distinguished *Marin Motor Oil* from this case. When the Third Circuit discussed *Marin Motor Oil* in the above quote from *Amatex*, the court explicitly referred to the *district court's* grant of a petition to intervene, not the bankruptcy court's grant of a petition.[3] The *Marin Motor Oil* court also

---

**2.** That provision is as follows: "That leave be and the same is hereby given to the Creditors' Committee to join in said lawsuit on its own behalf and on behalf of the Debtor and to employ its counsel ... whose compensation shall be on a general retainer subject to the order of this Court."

**3.** The *Amatex* court did not hold, as Cluett suggests in its brief, that "all orders of the bankruptcy court which *either grant or reject* a creditors' committee's petition to prosecute ancillary litigation on behalf of the debtor are final orders and appealable from the district court to the court of appeals as a matter of right." The *Amatex* court referred to the district court's

made this distinction, noting that the difficult question was not whether the bankruptcy court's decision "denying a claimed absolute right of intervention" was final, but whether the district court, which was essentially "an appellate tribunal reviewing a final judgment of a trial court, and whose order completely disposed of the appeal from the final judgment of the bankruptcy court, entered an appealable order." 689 F.2d at 448. *Amatex* also involved a bankruptcy court's denial of a petition to intervene. 755 F.2d at 1040.

This distinction makes a difference because as we noted above, *both* the bankruptcy court order and the district court order must be final for this court to have jurisdiction. The Third Circuit in *Marin Motor Oil* recognized that "an order granting intervention is ordinarily not considered appealable." 689 F.2d at 447; *see also* C. Wright, A. Miller & M. Kane, 7C *Federal Practice and Procedure* § 1923, at 507 (2d ed. 1986) ("An order granting leave to intervene is not final and is not appealable as of right."). The situation in *Marin Motor Oil* was a bankruptcy court's denial of intervention and the district court's subsequent reversal, granting intervention. The court thus reached the narrow holding "that when the bankruptcy court issues what is indisputably a final order, and the district court issues an order affirming or reversing, the district court's order is also a final order." *Marin Motor Oil*, 689 F.2d at 449 (emphasis added).[4] The *Marin Motor Oil* court assumed that the bankruptcy court order denying intervention was a final order, but neither *Marin Motor Oil* nor *Amatex* addressed whether a bankruptcy court order *granting* a creditors' committee's petition to intervene is "indisputably a final order," and neither court commented on the propriety of a court of appeals hearing the appeal of such a bankruptcy court order.

In addition to the obvious factual distinction between this case and the Third Circuit cases upon which Cluett relies, we believe that in the specific circumstances of this case, the bankruptcy court order granting the creditors' committee the right to intervene in the LHLC litigation is interlocutory. We agree with the district court's assessment that

> [a]lthough the order granted the creditors committee's petition for leave to join in the LHLC suit, the order, by itself, does not make the creditors committee a party. No motion has been made by the creditors committee seeking leave from the district court to join the action. It is clear that the creditors committee cannot join the LHLC suit as a party without the authorization of the district court hearing the suit. Further, if and when such leave is granted, the outcome of the LHLC action, and the merits of the creditors committee's role therein, will still be far from finally determined.

Thus while *Marin Motor Oil* and *Amatex* involved a district court's decision allowing intervention in litigation in that court, the grant to intervene in this case is interlocutory because it was made by a bankruptcy court and affirmed by a district court other than the court in which litigation was pending. The order did not have the effect of finally settling the parties' rights—the district court in which the LHLC litigation was pending still had the option to deny the creditors' committee the right to intervene.

Cluett argues that granting review of a bankruptcy court's grant of a petition to intervene is "logical and fair" in bankruptcy proceedings because the creditors' committee and parties who oppose the creditors' committee's intervention then have an opportunity to appeal the bankruptcy court's decision regarding the creditors' committee's standing to prosecute litigation

---

grant of a petition to intervene (reversing the bankruptcy court), but not the bankruptcy court's grant of a petition to intervene.

**4.** We note that in *Riggsby*, 745 F.2d at 1155, we rejected the Third Circuit's broad interpretation of the finality rule reflected in *Marin Motor Oil* on the somewhat different question of the finali-

ty of the district court's order. *See also In re Bowman*, 821 F.2d 245, 247–48 & n. 2 (5th Cir.1987) (reaffirming and explaining Fifth Circuit's acceptance of our rationale in *Riggsby* in *County Management, Inc.*, 788 F.2d at 313–14 & n. 4); *Goldblatt Bros., Inc.*, 758 F.2d at 1251 (discussing *Riggsby* ).

on behalf of the debtor.[5] In the circumstances of this case, however, the creditors' committee has not even petitioned the district court in which LHLC litigation is pending to enter that litigation. Although it is probable that it will seek to intervene, there is a possibility that it will not. Because the creditors' committee has not even attempted to intervene, it would be premature to review the bankruptcy court's approval of its standing to intervene on behalf of the debtor.[6] If the district court in this case had given its opinion on the creditors' committee's standing to intervene in another proceeding, it would in effect have given an advisory opinion, and such an opinion does not meet the case or controversy requirement under Article III of the Constitution. *See, e.g., Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 474, 102 S.Ct. 752, 759, 70 L.Ed.2d 700 (1982); *Alliance to End Repression v. City of Chicago,* 820 F.2d 873, 876 (7th Cir.1987).

### B. Employment of Attorney on Contingent Fee Basis

■ Cluett also challenges the district court's decision that the provisions in the bankruptcy court order employing attorney Herbert Beigel on a contingent fee basis in the LHLC litigation and setting a contingent fee schedule were not a final order.[7]

---

5. The bankruptcy court held a hearing on the question of standing, and considered Cluett's objections before determining the creditors' committee had standing to participate in the pending litigation on behalf of the debtor Lytton's. The district court dismissed this issue along with the other issues in the appeal, concluding it was interlocutory.

6. Cluett argues that the bankruptcy court order did in fact authorize the creditors' committee to intervene, because the plain language of the bankruptcy court order read that the court was authorizing the creditors' committee "to join" rather than to attempt to join. This order, however, does not extinguish the duty of the district judge in the LHLC litigation to determine the standing of parties in its own court.

Cluett also points to a colloquy between Cluett's attorney and Judge Susan Getzendanner, who was presiding over the pending LHLC litigation, in which the Judge recognized motions pending in the bankruptcy court regarding the request for attorneys' fees and for addition of other parties, and postponed further proceedings until after the bankruptcy court would have made its decisions on those motions. Judge Getzendanner's responses do not support Cluett's argument. It is true that she did not indicate that a motion to intervene would have to be presented to her, but we disagree that this colloquy indicates that she "obviously assumed" that the bankruptcy court would conclusively determine whether additional parties would be permitted to join the district court litigation. The colloquy indicates nothing more than that Judge Getzendanner was waiting to proceed with the case until the bankruptcy court had made its decisions on the then-outstanding motions. She did not in any way commit to any form of reaction to the bankruptcy court's decisions. It is only speculation to argue, as does Cluett, that Judge Getzendanner would have treated the bankruptcy court's order as final and binding if the creditors' committee was named as an additional party in the LHLC litigation. In any event, we do not think Judge Getzendanner's comments have any bearing on this case.

7. The parties refer to two sections of the bankruptcy court order that discuss the employment of Beigel and the contingent fee schedule. The prefatory paragraph of the order provides as follows:

THIS CAUSE COMING ON TO BE HEARD on motion ... to approve the contingency fee contract with Herbert Beigel wherein, in the event of recovery from Cluett, Peabody & Co., Inc. and/or Deloitte, Haskins & Sells, Herbert Beigel shall receive for and as compensation a contingency fee from the proceeds of the lawsuit equal to thirty-three and one-third (33⅓ %) percent of the first $500,000.00 collected, twenty-five (25%) percent of the next $1,500,-000.00 collected and fifteen (15%) percent of any proceeds in excess of $2,000,000.00....

Paragraphs 4 and 5 of the order provide as follows:

4. That Herbert Beigel and his firm, Herbert Beigel & Associates, Ltd. be and they are hereby employed as counsel to prosecute the above-described suit solely on a contingency fee arrangement through suit, settlement or otherwise as follows:

(a) thirty-three and one-third (33⅓%) percent on the first $500,000.00 collected;

(b) twenty-five (25%) percent on the next $1,500,000.00 collected;

(c) fifteen (15%) percent on any proceeds collected over $2,000,000.00

5. That out of the net proceeds collected after payment of fees as described in Paragraph 4 above, there be repaid all costs advanced by the Debtor in the prosecution of the lawsuit and the balance be divided as follows:

(a) LHLC Corporation shall receive five (5%) percent;

Cluett contends that the provisions employing Beigel and setting his fees use mandatory language such as "shall" and only require the bankruptcy court to "fill in the blanks" to determine Beigel's payment after the LHLC litigation is finally settled. Cluett relies on language in *In re Fox*, 762 F.2d 54, 55 (7th Cir.1985), to argue that all that is left for the bankruptcy court is "a purely mechanical, computerized, or in short 'ministerial' task, whose performance is unlikely either to generate a new appeal or to affect the issue that the disappointed party wants to raise on appeal from the order of remand." Cluett's reliance on *Fox* is misplaced, not only because that case involved the question of finality of a district court's remand of a case to a bankruptcy court, but also because the bankruptcy court's final determination of compensation for Beigel will involve *more* than the ministerial task of multiplying the amount of the judgment in the district court case (if any) by the percentages in the contingent fee schedule. Although the provision sets forth a contingent fee schedule and may give the appearance of a final determination as to fees, Beigel must comply with the procedures set forth in the bankruptcy code before getting any fees. That process involves petitioning to the bankruptcy court, notice to creditors, and a hearing. 11 U.S.C. § 330(a) (1982 & Supp. II 1984); Bankr.R. 2002; *see Brown v. Gerdes*, 321 U.S. 178, 182, 64 S.Ct. 487, 489, 88 L.Ed. 659 (1944); *In re Wilson Foods Corp.*, 36 B.R. 317, 320 (Bankr.W.D.Okla. 1984) (noting that notice and hearing are required for applications by professional persons for attorneys fees and compensation). According to the express language of 11 U.S.C. § 328(a) (1982 & Supp. II 1984), Beigel's fees are subject to later change and possibly reduction. *Cf. In re General Oil Distributors, Inc.*, 51 B.R. 794, 802–03 (Bankr.E.D.N.Y.1985) (reducing attorney fee by ten percent of lodestar amount because, among other reasons, litigation conducted by counsel was largely unsuccessful). Section 328(a) provides the following:

(b) Lytton's Inc. shall receive the balance of

The trustee ... with the court's approval, may employ or authorize the employment of a professional person ... on any reasonable terms and conditions of employment, including ... on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the finding of such terms and conditions.

Cluett argues that the bankruptcy court definitively set a mandatory fee because the court deviated from the "standard procedure" of authorizing employment of attorneys pursuant to section 328 of the bankruptcy code and then determining the rate of their compensation at the end of the case. Section 328, however, explicitly allows the employment of an attorney on a contingent fee basis. In addition, that provision does not prohibit setting a contingent fee schedule, nor does it state that setting a contingent fee schedule, or any rate of compensation, will exempt the fee-seeker from the usual bankruptcy code procedures of notice to creditors and a hearing before the bankruptcy court approves the fees. Indeed, we believe that section 328 read in conjunction with section 330 contemplates that an attorney seeking a contingent fee payment still must apply to the bankruptcy court and that the language of section 328 expressly allows setting a rate of payment at the beginning of an attorney's employment that may later be changed.

Furthermore, Beigel may not receive any fee at all if he and LHLC (and the creditors' committee, if they are allowed to join) do not succeed in the pending district court suit. In addition, other courts have held that when a request for fees is not a final request, orders based on such requests are not final orders. *See In re Callister*, 673 F.2d 305, 306–07 (10th Cir.1982); *In re Yermakov*, 718 F.2d 1465 (9th Cir.1983); 2

ninety-five (95%) percent.

*Collier on Bankruptcy,* ¶ 331.03, at 331–9 (15th ed. 1987) ("interim allowances are always subject to the court's re-examination and adjustment during the course of the case as all expenses of administration must receive the court's final scrutiny and approval").

### C. Authorization of $10,000 Advance of Out-of-Pocket Expenses and Payment of Later Costs

■ Cluett contends that the provision of the bankruptcy court order authorizing an advance of $10,000 from the debtor Lytton's estate for attorney Beigel's out-of-pocket expenses and the payment of later costs was a final order.[8] As with the contingent fees, however, attorney Beigel must apply to the bankruptcy court for payment of expenses and later costs. 11 U.S.C. §§ 330(a), 331; Bankr.R. 2002. The bankruptcy court has the power to order Beigel to return any money advanced by the debtor Lytton's. *Cf. In re Callister,* 673 F.2d 305, 307 (10th Cir.1982) ("Interim awards . . . are refundable to the estate in cases of misconduct."). There is a further check on payment of this advance, because the provision explicitly states that Beigel must account for all costs advanced. This advance is not a final application for payment of expenses and is therefore interlocutory. *See id.*

Cluett argues that *In re UNR Industries, Inc.,* 736 F.2d 1136, 1137–38 n. 2 (7th Cir.1984), is analogous to this case and supports its position that this provision regarding the advance of out-of-pocket expenses was final. In *UNR Industries,* this court determined that an order authorizing the debtor to pay court reporters, interpreters, and translators employed in the dis-covery process of litigation was a final order. Cluett contends that this case is similar because Beigel will "presumably" spend the advance to finance discovery activities. That Beigel will use the advance to pay for discovery is, however, only Cluett's presumption. Furthermore, *UNR Industries* is distinguishable because the discovery was finished, and there was no chance of further request for expenses associated with that discovery. *See UNR Industries,* 736 F.2d at 1137–38. In this case, Beigel has only begun his work and will return to the bankruptcy court to seek payment for other expenses. We believe this provision has more the character of the interim order to pay costs, which is not appealable, than of the final order to pay costs, which the court in *UNR Industries* determined was appealable. Beigel will have to go through the process set forth in the bankruptcy code, justifying his costs, before the amounts are approved by the court.

The bankruptcy court order also authorizes payment of Beigel's later costs. This authorization has more the character of an interim order to pay costs than does the advance. *See Callister,* 673 F.2d at 306–07. Cluett suggests that the bankruptcy court order constitutes a "blank check" for payment of future costs, but Beigel again must account for these costs, and must apply to the bankruptcy court, which involves notice to creditors and a hearing. Thus there are checks on the payment of expenses.[9]

### D. Collateral Order Doctrine

■ Cluett attempts to invoke the "collateral order" doctrine in arguing that the

---

**8.** The provisions of the bankruptcy court order authorizing an advance of out-of-pocket expenses and payment of future costs are as follows:

    1. That there be advanced by the Debtor to Herbert Beigel for costs and out of pocket expenses the sum of $10,000.00 in the suit filed on behalf of LHLC Corporation pending in the United States District Court for the Northern District of Illinois as Case No. 86 C 0778.

    2. That all further requests for necessary costs and out of pocket expenses be on application to this Court on notice.

    3. That Herbert Beigel shall render an accounting for all costs advanced.

**9.** The bankruptcy court expressed its reluctance to approve unjustified expenses, stating "the Court has control over any additional allowance or expenses, and the Court would be loath to grant any additional amounts for expenses unless they were justified by circumstances not contemplated as of this morning or which could not have been contemplated as of this morning."

bankruptcy court order was appealable. The collateral order exception to the finality rule is appropriate for a "small class" of prejudgment orders that "finally determine claims of right separable from, and collateral to, rights asserted in the action, [and are] too important to be denied review and [are] too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). This is a narrow exception to the finality rule. *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981); *In re Moens*, 800 F.2d 173, 176 (7th Cir.1986). Three conditions must be met for an order to fall within the collateral order exception. The order must "'conclusively determine the disputed question,' 'resolve an important issue completely separate from the merits of the action,' and 'be effectively unreviewable on appeal from a final judgment.'" *Richardson–Merrell Inc. v. Koller*, 472 U.S. 424, 431, 105 S.Ct. 2757, 2761, 86 L.Ed.2d 340 (1985) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978)).

This order fails to satisfy at least two of the three conditions. As we have discussed above, the order does not "conclusively determine" the creditors' committee's right to join in the litigation pending in district court; neither does it determine the fees and costs Beigel will receive for his services. Beigel must apply to the bankruptcy court and go through notice to creditors and a hearing to receive payment. Furthermore, the issues Cluett has raised regarding the bankruptcy court order may be appealed later. The standing of the creditors' committee will be considered by the district court in which litigation is pending and may later be appealed to this court. In addition, Beigel's costs and fees may be appealed after the bankruptcy court has issued a final order regarding those fees. This bankruptcy court order does not "affect[ ] rights that will be irretrievably lost in the absence of an immediate appeal." *Richardson–Merrell*, 472 U.S. at 431, 105 S.Ct. at 2761.[10]

Cluett's real fear is that the bankruptcy estate of the debtor Lytton's, to which it has the third largest priority administrative claim, will be depleted if the debtor's estate must pay out costs and attorneys' fees to support the LHLC and creditors' committee's suit (if the latter is allowed to join) against it and Deloitte.[11] Cluett cites *In re White Motor Corp.*, 25 B.R. 293 (Bankr.N.D.Ohio 1982), in which the district court applied the collateral order doctrine to reach its decision. In that case, a bankruptcy judge approved the creation of a program in which a Special Master would determine the merits of numerous product liability claims. The bankruptcy court (different from the one that issued the order) deemed the order final under the collateral order doctrine because the appeal challenged the jurisdiction of the bankruptcy court to approve the Special Master program, a separate issue from the merits of the product liability suits. The court also believed that the challenge would be "effectively unreviewable" after the debtor's reorganization was completed. The court noted that "[a]ssets will have been depleted and other potentially liable parties dismissed or discharged." *Id.* at 295–96. Unlike the situation in *White Motor Corp.*, there is no risk of irreparable loss of assets to the debtor Lytton's estate. Attorney Beigel must account for all costs, and will not receive a fee unless the litigation is successful, which would in any event only serve to enrich the estate. This case does

---

10. For the same reasons, we reject Cluett's argument that this order is final because it is a "distinct proceeding." This case does not involve a proceeding "so distinct and conclusive either to the rights of individual parties or to the ultimate outcome of the case that final decisions as to [it] should be appealable as of right." *In re Mason*, 709 F.2d 1313, 1317 (9th Cir.1983).

11. On October 27, 1986, District Judge Susan Getzendanner granted Cluett's motion to dismiss the counts LHLC had brought against it. The Court denied Deloitte's motion to dismiss LHLC's appeal of that order, No. 86–3055, presently pending in this court.

not fit within the collateral order exception to the finality rule.[12]

For the foregoing reasons, we dismiss this appeal for lack of jurisdiction.

12. We do not believe the court erred in denying Cluett leave to pursue an interlocutory appeal on the ground that the appeal was "premature" because the creditors' committee had not as yet, and has not, sought leave to intervene from the district court in which the LHLC suit is pending.